## EDITH G. LEWIS v. CITIZENS AGENCY OF MADELIA, INC., AND OTHERS.

235 N. W. 2d 831.

November 14, 1975—No. 45288.

*Bernes, Rodenberg & O'Connor, Wm. T. O'Connor,* and *James R. Olson,* for appellant.

*Manahan & Murphy* and *Philip J. Murphy,* for respondent.

Heard before Sheran, C. J., and Otis, Kelly, Todd, and Yetka, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Defendant Citizens Agency of Madelia, Inc., sought leave to appeal from an order of the district court affirming a judgment of the county court entered in favor of plaintiff. We granted leave to appeal and now affirm.

In February 1972, plaintiff's husband, Gordon L. Lewis, age 55, made application for a policy of life insurance with Minne-

sota Protective Life Insurance Company with a face amount of $4,124, naming his wife as beneficiary. The application was taken by L. G. Hoeft, working under the supervision of Joel F. Jenkins, a general agent for the life insurance company. Defendant Citizens Agency, a corporation formed to handle insurance business and located in the Citizens National Bank of Madelia, furnished Jenkins the lead to Mr. Lewis. For reasons unknown, the life insurance policy was never issued. Instead, in April 1972, Mr. Hoeft obtained from Gordon Lewis an amendment to the original application providing for a "Flexible Retirement Annuity" policy in lieu of the life insurance policy. This policy was issued and delivered to Mr. Lewis.

Sometime later, in the spring of 1972, plaintiff took the annuity policy together with the original application for life insurance to one Dale R. Williams, an officer of Citizens Agency and an officer of the bank, to discuss whether the policy should be canceled. Mr. Williams, after examining the original life insurance application, but not the amended application or the annuity policy itself, advised plaintiff to retain the policy in view of the death benefit and the condition of Mr. Lewis' health.[1] In reliance on this advice, plaintiff authorized the continued automatic payment of monthly premiums from their joint checking account, by arrangement of Mr. Williams with the bank.

In February 1973, plaintiff again met Dale Williams at the bank in Madelia to discuss her need for a loan to pay her income tax. He again advised her that on her husband's death the insurance would provide her with $4,124. As before, Mr. Williams was not aware of the amendment to the life insurance application or the attached annuity policy. A loan in the amount of $1,500 was then authorized and plaintiff signed a promissory

---

[1] Gordon L. Lewis died on March 13, 1973, from cancer of the liver, a condition which was discovered in December 1972, three months prior to his death. However, prior to this he was suffering from emphysema which caused him to be hospitalized from time to time. This evidence results in a dispute as to whether he was insurable during 1972.

note to the bank. No assignment of the proceeds of insurance was made.[2]

When Mr. Lewis died in March 1973, plaintiff took the policy to Mr. Williams to recover the proceeds. Sometime later he advised her the policy would only provide $260, the amount of premiums paid, having since discovered that it was, in fact, an annuity policy.

Plaintiff instituted this lawsuit in county court against Citizens Agency, Joel Jenkins, and the life insurance company, alleging that she was damaged in the amount of $4,124 as a result of her reliance on the representations made by Dale Williams, an officer of Citizens Agency. At trial, L. G. Hoeft, the agent who obtained the initial application and also the amended application, was not called as a witness. There was no evidence why the "switch" in coverage was made. The trial court found that plaintiff relied on Mr. Williams' statements that the policy would provide her with that sum on her husband's death and decided to continue premium payments; that she would not have decided to do so nor would she have taken out the loan had she known the policy had been changed to an annuity. Judgment was rendered for plaintiff against Citizens Agency only, in the amount of $4,124, and was affirmed on Citizens Agency's appeal to the district court. This court granted a petition by said defendant for discretionary review.

Appellant raises three issues: (1) Whether Edith Lewis was, in fact, acting as the agent of her husband. (2) Whether the representations by appellant's agent were of an innocent nature. (3) What measure of damages is appropriate.

■ Appellant claims there is no evidence to suggest that plaintiff was acting as an agent of her husband when she discussed the insurance policy with Dale Williams, and as a consequence,

---

[2] Since Mr. Williams only examined the original life insurance application, he testified that one of the factors upon which he relied in authorizing the loan was his belief that upon Mr. Lewis' death, money would be available to plaintiff to repay the loan.

she had no interest or "standing" upon which to base her suit. However, as the district court judge observed in his supporting memorandum, plaintiff was at the time of the representations the beneficiary of her husband's policy and, thus, could maintain her action in that capacity. Hagedorn v. Aid Assn. for Lutherans, 297 Minn. 253, 211 N. W. 2d 154 (1973).

Appellant is correct that the marital relationship, standing alone, does not constitute a wife the agent of her husband. Gorco Const. Co. v. Stein, 256 Minn. 476, 99 N. W. 2d 69 (1959); 9A Dunnell, Dig. (3 ed.) § 4262a. However, Gorco also stated that agency would be found based on evidence—

" * * * which arises from the authority of the husband, expressly or impliedly conferred, as in other cases." 256 Minn. 476, 479, 99 N. W. 2d 69, 72.

As we view the record, there is ample evidence which went unrebutted that plaintiff had such implied authority to act as her husband's agent. The Lewises maintained a joint checking account at the bank; plaintiff alone borrowed the money during her husband's illness to pay their joint tax obligation; and Mr. Williams accepted her signature on behalf of both parties. Indeed, over the years a community of interest had developed between Gordon Lewis, Edith Lewis, and Dale Williams, the latter giving advice on many financial matters. At various times, in his dual capacity of insurance agent and banker, Williams dealt with either Mr. or Mrs. Lewis separately and never questioned either party's authority to make decisions binding the other.

■ Appellant claims it cannot be guilty of misrepresentation because Dale Williams' statements were innocently and honestly made. Such claim might persuade us if this were a case of fraud or deceit. However, in an action for misrepresentation, liability may be found even where the statement was not intentionally made, or was a mistake. Hollerman v. F. H. Peavey & Co. 269 Minn. 221, 130 N. W. 2d 534 (1964). In Swedeen v. Swedeen, 270 Minn. 491, 496, 134 N. W. 2d 871, 875 (1965), we said:

"\* \* \* In reviewing this issue we are controlled by the principle of law that if a person represents as true material facts susceptible of knowledge to one who relies and acts thereon to his injury, the one making the representation cannot defeat recovery by showing that he did not know his representations were false or that he believed them to be true."

See, also, Swanson v. Domning, 251 Minn. 110, 86 N. W. 2d 716 (1957).

It is obvious the true nature of the policy as an annuity was "susceptible of knowledge" by Dale Williams. He had all the documents in front of him. All he had to do was read beyond the initial life insurance application. His error caused Mrs. Lewis to continue making premium payments on the assumption a policy of life insurance was still existent. Since she had no special competence or expertise in insurance matters, she was justified in relying on the representations. Whether they were innocently made is of no importance.

■ The issue of plaintiff's damages is not as readily resolved as the others, and it is this issue which is one of first impression. Plaintiff alleged, and the trial court granted, damages in the face amount of the life insurance policy. On appeal to the district court, the damages were affirmed with this comment in the judge's memorandum:

"\* \* \* The factual situation of the present controversy does not readily fit within the 'out of pocket rule.' Here the plaintiff parted with the premiums necessary to support a return of $4124.00 in death benefits, as represented to her under the life insurance contract. Thus the plaintiff has essentially parted with $4124.00 in insurance benefits and is entitled to this sum in damages."

The trial court was applying its view of damages recoverable in an action for misrepresentation. The rule in Minnesota, the minority rule, is the so-called "out-of-pocket" damage rule. See, Oleck, Damages to Persons and Property, § 375. Appellant

strenuously argues that the court applied the wrong measure of damages, the "benefit-of-the-bargain" rule, which is applied by the majority of states. The relative wisdom of either rule need not be determined by us since our decision today does not require us to change our present rule in every case. We limit our application of the holding in this case to its facts. If any further changes are to be made they will be done on a case-by-case basis.

The out-of-pocket rule allows damages to be recovered which are the natural and proximate loss sustained by a party because of reliance on a misrepresentation. Under this rule it is not a question of what the plaintiff might have gained through the transaction but what was lost by reason of defendant's deception. Strouth v. Wilkison, 302 Minn. 297, 224 N. W. 2d 511 (1974); Weise v. Red Owl Stores, Inc. 286 Minn. 199, 175 N. W. 2d 184 (1970); Tysk v. Griggs, 253 Minn. 86, 91 N. W. 2d 127 (1958); Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. 2d 305 (1955). The loss is usually measured as the difference between what plaintiff parted with and what he received. 8A Dunnell, Dig. (3 ed.) § 3841.

It might seem that the only out-of-pocket loss suffered by plaintiff was the $260 in premium payments. All the cases applying the rule to date have involved misrepresentations in the sale of goods, the sale of real property, or the procuring of leases. No Minnesota case involves a misrepresentation of the existence of a life insurance policy. In the former types of cases, a return of the out-of-pocket damages will, in most cases, return the injured party to the exact same position she would have been in, but for the misrepresentation. However, in the situation involving a nonexistent life insurance policy, a party cannot be placed back in the status quo position by the out-of-pocket rule. Plaintiff's reliance on Mr. Williams' statements regarding the possible future death benefits caused her to forsake cancelling the policy, undertake a loan, and possibly forego purchasing additional life insurance. She cannot be made whole by a mere return of the premiums, since in the interim her husband became de-

finitely uninsurable and died thereafter. These facts bear out the reason for our statement that in applying the "out-of-pocket" rule, it must be construed in light of the facts then being considered. Tysk v. Griggs, 253 Minn. 86, 99, 91 N. W. 2d 127, 136 (1958).

Thus, as we view the facts presented to the trial court, it seems reasonable to us that the natural and proximate loss suffered by Mrs. Lewis was the life insurance proceeds she expected to receive upon her husband's death and not merely the premiums supporting the policy. Although this is not a fraud or deceit case, the rule of damages used in such cases by this court seems to provide a more just result in cases like the instant case. The rule is stated in Dunnell's Digest as follows:

"* * * In cases of fraud or deceit, the defendant is responsible for those results which must be presumed to have been within his contemplation at the time of the commission of the fraud, and plaintiff may recover for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations. It must appear that the fraud and damage sustain to each other relation of cause and effect, or at least that the damage might have resulted directly from the fraud." 8A Dunnell, Dig. (3 ed.) § 3841.

We have purposely avoided defining a precise rule of damages applicable in all future cases and have focused instead on the proximate result of reliance on the misrepresentation to reach a just result. In so doing, we have found the loss suffered by plaintiff to be the expected life insurance proceeds of $4,124.

Affirmed.