**W.K.T. DISTRIBUTING COMPANY, Appellee,**

v.

**SHARP ELECTRONICS CORPORATION, Appellant.**

No. 83–2260/2267.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1984.

Decided Oct. 24, 1984.

Duane W. Krohnke, Minneapolis, Minn., and Peter Dankin, New York City, for appellant.

W.D. Flaskamp, Minneapolis, Minn., for appellee.

Before BRIGHT, ROSS and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Sharp Electronics Corporation appeals from a $300,000 compensatory damage award entered in favor of W.K.T. Distributing Company. Sharp argues that W.K.T. failed to prove its case under any of the theories—breach of contract, breach of fiduciary duty, and fraud—upon which the district court awarded judgment.

We find that the district court committed error in assessing the damages recoverable by W.K.T. under a breach of contract theory. Because the district court did not view the parties' contract as one terminable at will, it failed to evaluate W.K.T.'s entitlement to recover recoupment damages. We also find error in the district court's determination that Sharp and W.K.T. had a fiduciary relationship. Finally, although the district court's determination that W.K.T. proved its case under a fraud theory is not clearly erroneous, the district court failed to follow Minnesota law in calculating its damages award.

We remand to the district court for consideration of W.K.T.'s claim for recoupment damages and for reconsideration of the proper amount of damages, if any, recoverable by W.K.T. for fraud under Minnesota law.

## I. Facts

In 1975, W.K.T. Distributing Company was organized to engage in the business of wholesale distribution of appliances. W.K.T. distributed a variety of consumer products, including microwave ovens. In May 1977, W.K.T. began distributing microwave ovens manufactured by Sharp Electronics Corporation in Minnesota and western Wisconsin.

On May 29, 1980, W.K.T. was notified of Sharp's intent to terminate it as a distributor of Sharp microwave ovens effective July 1, 1980. Sharp cited poor sales performance as the basis for the termination. In August 1980, W.K.T.'s officers ceased all operations and liquidated the corporation.

This cause of action was then commenced in district court. Trial was to the court and the Honorable Earl R. Larson granted W.K.T. $300,000 in compensatory damages, with no indication of how this award was allocated among the various theories of recovery upon which judgment was entered.

## II. Breach of Contract Claim

### A. Contract Terminable at Will

■ The district court determined that Sharp and W.K.T. had entered into a binding distribution agreement that was terminable only upon a showing of good cause. It further determined that Sharp had failed to prove good cause for the termination. We view the contract between Sharp and W.K.T. as one terminable at will upon reasonable notice.

Under Minnesota law, "a contract having no definite duration, expressed or which may be implied, is terminable by either party at will upon reasonable notice to the other." *Benson Cooperative Creamery*

*Association v. First District Association,* 276 Minn. 520, 151 N.W.2d 422, 426 (1967). *See Ag-Chem Equipment Co. v. Hahn, Inc.,* 480 F.2d 482, 487 (8th Cir.1973); *McGinnis Piano & Organ Co. v. Yamaha International Corp.,* 480 F.2d 474, 479 (8th Cir.1973). The record in this case fails to reveal any express or implied agreement between the parties respecting the duration of the contract.

W.K.T. does not dispute the district court's determination that there was no express written agreement between the parties regarding the duration of the contract. Nor does W.K.T. claim that the parties entered into an express oral agreement regarding duration. This is understandable in view of the testimony of Wesley VanGorder, a former president of W.K.T. In response to a question as to whether he had ever discussed "with anyone at Sharp the term of this [distributorship] agreement or the length of time it would continue," VanGorder stated, "I don't think it was ever a subject of conversation."

We are also convinced that no agreement as to duration can be implied from the circumstances. W.K.T.'s argument to this court is that the parties had an implied understanding, based upon custom and practice in the appliance industry, that their supplier-distributor relationship would continue as long as W.K.T. performed satisfactorily. To support this argument, W.K.T. presented the testimony of a sales manager for an appliance manufacturer other than Sharp and a former distributor of Kelvinator and Sharp products. The testimony of these witnesses relates no more than their personal views and experiences. We simply cannot conclude that the evidence presented establishes a custom and practice for the industry as a whole that a supplier-distributor relationship will continue as long as the distributor performs satisfactorily.

### B. Recoupment

■ Under Minnesota law, a party whose at will contract is terminated without good cause may be entitled to recoup

its investment. Sharp cited poor sales performance, numerous management changes, and W.K.T.'s poor financial condition as reasons for terminating W.K.T. as a distributor of Sharp microwave ovens. The district court rejected Sharp's proffered reasons and concluded that Sharp did not have good cause for terminating its distribution agreement with W.K.T. We have carefully reviewed the record evidence and we cannot say that the district court's finding of lack of good cause for the termination is clearly erroneous.

■ "The doctrine of recoupment is designed to remedy the inequity which arises when a manufacturer, after having required a distributor to make a sizeable investment in the furtherance of a distributorship, terminates the working relationship without just cause, leaving the distributor with substantial unrecovered expenditures." *Ag-Chem*, 480 F.2d at 486. An action for recoupment is in fact an action for breach of contract in which the court is asked to imply an agreement as to the duration of the contract in order "to provide the distributor with a reasonable opportunity to recoup [its] expenditures." *Id.* What amounts to a reasonable period of time to recoup expenditures varies with the circumstances of each case. *Id.* at 486–87. If the manufacturer terminates the distribution agreement without good cause before a reasonable period of time has passed, it can be held in breach of the parties' contract and liable for damages.

■ Recoupment damages recoverable in Minnesota are limited to the distributor's "unrecouped expenditures, taking into account, of course, of the value of any benefits it may have derived from the arrangement during its existence or may derive thereafter." *Ag-Chem*, 480 F.2d at 489 (quoting *Allied Equipment Co. v. Weber Engineered Products, Inc.*, 237 F.2d 879, 882 (4th Cir.1956)). As stated by the court in *Schultz v. Onan Corp.*:

"[U]nrecouped expenditures" refers to the initial or continuing investment required of the franchisee, reduced to the extent that profits were earned by the

distributorship as a fruit of the investment. In particular, "unrecouped expenditures" includes any unamortized capital expenditures that would have produced future profits (or reduced future costs) had the distributorship continued in existence. * * * The plaintiff is not permitted to recover damages for loss of future profits. Recovery for future profits is prohibited because recoupment is an equitable doctrine intended to restore the franchisee's lost investment, not to award damages at law for the going value of the business.

737 F.2d 339, 348 (3d Cir.1984) (citations omitted) (discussing Minnesota law).

W.K.T. offered evidence of unrecouped operating expenditures suffered as a result of Sharp's untimely termination of it as a distributor of Sharp microwave ovens. The district court, in finding that the contract between Sharp and W.K.T. was other than one terminable at will, did not consider W.K.T.'s recoupment claim. We remand to the district court for consideration of the recoupment damages, if any, recoverable by W.K.T.

## III. Breach of Fiduciary Duty Claim

The district court determined that Sharp had a fiduciary duty to deal with W.K.T. in good faith. Because W.K.T.'s distributorship was terminated without good cause, the district court determined that Sharp had breached its fiduciary obligations.

■ We find no authority under Minnesota law to support the proposition that a fiduciary relationship existed between Sharp and W.K.T. As recognized by the district court, the parties, as a result of arm's length negotiations, entered into an ordinary supplier-distributor relationship. Although Sharp suggested prices, set quotas, and engaged in cooperative advertising with W.K.T. for the sale of its products, Sharp had no direct control over the operations of W.K.T. W.K.T. was an independently owned business corporation that distributed products other than the Sharp line of microwave ovens. W.K.T. made its own

hiring decisions, controlled its own sales force, and made its own business judgments. Although "[i]n *every* contract there is an implied covenant of good faith and fair dealing on the part of *both* parties," this alone does not transform a business relationship into a fiduciary relationship. *Bain v. Champlin Petroleum Co.,* 692 F.2d 43, 47 (8th Cir.1982). We simply cannot conclude that a Minnesota court, faced with this question, would characterize the relationship between Sharp and W.K.T. as one of a fiduciary nature.

## IV. Fraud Claim

The district court determined that throughout the parties' supplier-distributor relationship, Sharp knowingly misrepresented to W.K.T. certain material facts regarding the availability, allocation, and price, of Sharp microwave ovens. More specifically, the district court found that Sharp misrepresented to W.K.T. its intention to sell direct to national accounts within W.K.T.'s distribution area only derivative models, distinguishable from those sold by W.K.T., and at a price that would allow W.K.T. to compete with Sharp's national accounts. Sharp further misrepresented the availability of its microwave products and wrongfully withheld or delayed shipment of products on order by W.K.T. The court concluded that W.K.T. relied on Sharp's misrepresentations to its detriment and that the misrepresentations were a direct and proximate cause of damage to W.K.T.

 A determination as to whether a defendant has misrepresented a material fact and whether the misrepresentation was the proximate cause of plaintiff's injuries is a factual question. *Strouth v. Wilkison,* 302 Minn. 297, 224 N.W.2d 511, 513 (1974). On review, this court will not set aside a district court's factual findings unless clearly erroneous and due deference shall be given to the opportunity of the trial court to appraise and weigh the evidence. *Balicao v. University of Minnesota,* 737 F.2d 747, 749–50 (8th Cir.1984) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct.

525, 541, 92 L.Ed. 746 (1948)). Upon carefully reviewing the record, we find substantial evidence to support the trial court's finding that Sharp knowingly misrepresented material facts respecting product availability, allocation, and price, upon which W.K.T. relied to its detriment.

 The district court failed to allocate its damage award among the various theories of recovery upon which judgment was entered. Our analysis, however, leads us to conclude that the district court improperly awarded prospective profits to W.K.T. on its fraud claim. In a misrepresentation action, Minnesota follows the out-of-pocket damage rule. Under this rule, "a plaintiff can only recover what he has actually lost and not the expected profits from the transaction." *LeSueur Creamery, Inc. v. Haskon, Inc.,* 660 F.2d 342, 346–47 n. 6 (8th Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982) (citing *General Corp. v. General Motors Corp.,* 184 F.Supp. 231, 240 (D.Minn.1960)). *See Lewis v. Citizens Agency of Madelia, Inc.,* 306 Minn. 194, 235 N.W.2d 831, 835 (1975). The loss is usually measured as the difference between what the plaintiff parted with and what the plaintiff received. *Id.* 235 N.W.2d at 835.

The Minnesota Supreme Court has created a narrow exception to the out-of-pocket damage rule and permitted recovery for consequential economic damages under circumstances where the recovery of out-of-pocket expenditures would not return the injured party to the position it was in but for the misrepresentation. *See Lewis,* 235 N.W.2d at 835. We are convinced, however, that assessing the amount of damages, if any, suffered by W.K.T. under the out-of-pocket rule will effectively operate to place W.K.T. in the position that it was in but for the misrepresentation. Accordingly, on remand, we direct the district court to evaluate W.K.T.'s fraud claim under the out-of-pocket damage rule.

W.K.T.'s Exhibit 52 represents estimated lost gross profits from reduced sales of Sharp microwaves for the period from January through May of 1980. At this time

W.K.T. was still a distributor of the Sharp line of microwaves but Sharp was failing to ship for resale the microwave ovens ordered by W.K.T. While Minnesota law clearly does not permit a party to recover "expected profits" under the out-of-pocket damage rule, *LeSueur Creamery,* 660 F.2d at 346–47 n. 6, it does allow a party to recover those profits actually earned prior to the discovery of the fraud. *General Corp.,* 184 F.Supp. at 240; *Lowrey v. Dingmann,* 251 Minn. 124, 86 N.W.2d 499, 502 (1957). Whether Exhibit 52's estimated lost gross profits would be considered profits actually earned under Minnesota law is a question we leave for resolution on remand to the district court.

## V. Conclusion

We remand this case to the district court with directions to consider W.K.T.'s claim for recoupment damages. We also direct the district court to reconsider the amount of damages, if any, recoverable by W.K.T. for fraud under Minnesota law.

Affirmed in part, reversed in part, and remanded with directions.