**B.F. GOODRICH COMPANY,**
Defendant,

v.

**MESABI TIRE COMPANY,**
**INC., Plaintiff.**

No. C9–88–550.

Supreme Court of Minnesota.

Oct. 21, 1988.

James W. Littlefield, Aimee Bissonette, Minneapolis, for plaintiff.

Steven B. Nosek, Rodney A. Honkanen, Minneapolis, for defendant.

## OPINION

SIMONETT, Justice.

Should damages in this misrepresentation case have been limited to out-of-pocket loss? The issue comes to us on a certified question from the United States District Court.

The following facts appear from the record and the trial court's Certification Order. Plaintiff-respondent Mesabi Tire Company, Inc., operated an established business in northern Minnesota selling off-the-road (OTR) tires primarily to the mining companies. Mesabi obtained its tires from defendant-appellant B.F. Goodrich Company under a consignment agreement of indefinite duration, terminable by either party on 5 days' written notice. In June 1985, a newspaper article reported that Goodrich was considering possible restructuring of its business. In July, Mesabi's president, Carl D'Aquila, inquired of Goodrich what this news meant, and, so Mr. D'Aquila testified, he was assured by Goodrich that it would continue making OTR tires. On August 25, 1985, however, Goodrich announced that it was discontinuing the manufacture and sale of OTR tires. In February 1986, Goodrich terminated the consignment agreement on 5 days' notice. Mesabi, claiming it was unable to get another source of supply, went out of business and brought this diversity lawsuit against Goodrich in federal court.

Mesabi sued for misrepresentation. The jury found that in July 1985 Goodrich had intentionally misrepresented to Mesabi that it would continue supplying Mesabi with tires; that Mesabi was thereby induced to refrain from acting to obtain another source of supply; and that, as a result, Mesabi sustained damages directly caused by its reliance on the misrepresentation.

Plaintiff's claim at trial was not that it had lost any right to continue as a Goodrich dealer; that right, in any event, could have been terminated at any time on 5 days' notice. Rather, Mesabi's claim was that because it relied on the misrepresentation it had lost an opportunity to obtain a source of tires from another manufacturer.

Mesabi further took the position at trial that it had sustained no "out-of-pocket" loss. Instead, Mesabi claimed that it was entitled to recover for the demise of its established business as a "consequential economic loss." Over defendant's objection that plaintiff was limited to out-of-pocket loss, Mesabi was allowed to introduce evidence that the fair market value of its business in July 1985 (based on capitalization of past earnings) was $1,168,707; that the business, when terminated, had salvageable assets of $300,000: and, therefore, the net loss of value of the business as a going concern was $868,707. The trial judge instructed the jury that it could award damages "for the consequential economic damages of which the misrepresentation is a cause." The jury awarded $487,500.

Now, in its post-trial motion for judgment notwithstanding the verdict, Goodrich renews its contention that Mesabi was entitled to recover only out-of-pocket loss, and, because none was proved, plaintiff should recover nothing from defendant Goodrich.

The trial court, having the post-trial motion under advisement, certifies to us two questions:

1. Does the consequential economic loss exception to the rule limiting damages for fraudulent misrepresentation to out-of-pocket loss apply to the facts of this case?

2. If so, does the consequential economic loss exception include lost future profits?

On a motion for judgment notwithstanding the verdict, the facts are considered in the light most favorable to the verdict. *E.g., Nodak Oil Co. v. Mobil Oil Corp.*, 533 F.2d 401, 407 (8th Cir.1976). Here, Goodrich, even though it had asked that the damages question be certified, seeks to argue the facts before us. Goodrich argues strenuously that there is no evidence to support a finding that Mesabi could have obtained OTR tires from another source if it had known in July, rather than in August, that Goodrich was going to discontinue making the tires. The record shows that after Mesabi learned in August that Goodrich was discontinuing OTR tires, it sought a new tire dealership with Goodyear Tire and Rubber Company but was turned down and made no effort to contact two other tire manufacturers. Mesabi claimed it could have made a deal with Goodyear in July. Defendant, on the other hand, put in evidence that even in July Goodyear would have turned Mesabi down. In its Certification Order, however, the trial judge directs us to accept as fact that "Goodrich's misrepresentations in July, 1985, prevented Mesabi from obtaining a new domestic source of OTR tires," and this, of course, is what we must do. Our role in answering certified questions is not to review fact issues.

Essentially, then, we have a case where the defendant manufacturer intentionally misrepresents that it will continue to supply the plaintiff retailer with tires to sell. Plaintiff, relying on that misrepresentation, refrains from seeking another source of supply and is thereby prevented by the misrepresentation from obtaining a new source of tires. Plaintiff has no out-of-pocket loss but does lose its business. In these circumstances, what is the measure of plaintiff's damages?

## I.

■ Minnesota subscribes to the rule that in transactions giving rise to a misrepresentation action, the damages are to be measured by "out-of-pocket" loss. *Lowrey v. Dingmann*, 251 Minn. 124, 127, 86 N.W. 2d 499, 501–02 (1957); *Strouth v. Wilkinson*, 302 Minn. 297, 300, 224 N.W.2d 511, 514 (1974). In other words, the damages are the difference between the actual value of the property received and the price paid for the property, along with any special damages naturally and proximately caused by the fraud prior to its discovery, including expenses incurred in mitigating the damages. In this state we do not subscribe to the "benefit-of-the-bargain" rule which allows the plaintiff to recover the difference between the value of the property received and the value to plaintiff that the property would have had if the representation had been true. The difficulty with the benefit-of-the-bargain rule, from this court's perspective, is that determining what plaintiff would have had if the situation had been different too often involves overly hypothetical and speculative proof. We prefer the out-of-pocket rule where "it is not a question of what the plaintiff might have gained through the transaction but what he lost by reason of defendant's deception." *Tysk v. Griggs*, 253 Minn. 86, 95, 91 N.W.2d 127, 134 (1958). Nevertheless, we recognize that there may be some instances where the out-of-pocket rule does not work.

One such instance was *Lewis v. Citizens Agency of Madelia, Inc.*, 306 Minn. 194, 235 N.W.2d 831 (1975). In *Lewis*, plaintiff relied on an insurance agent's misrepresentation that she had a life insurance policy on her husband's life. After her husband became ill and uninsurable, she found that, in fact, her policy was only an annuity. While it could be said that plaintiff's loss was her out-of-pocket expense for the annuity premiums, we observed that plaintiff "cannot be made whole by a mere return of

the premiums." *Id.*, at 200, 235 N.W.2d at 835. Consequently, we held that plaintiff could recover the amount of life insurance proceeds that the premiums paid would have purchased. In other words, we declined to apply the out-of-pocket rule in this particular case where that rule would not restore the injured party substantially to her former position. Mesabi, of course, claims its case is like *Lewis.*

Both parties also cite *W.K.T. Distributing Co. v. Sharp Electronics Corp.*, 746 F.2d 1333 (8th Cir.1984), in which the Eighth Circuit was asked to determine the applicable Minnesota rule of damages in an intentional misrepresentation case with facts somewhat similar to what we have here. In *W.K.T.*, the plaintiff retailer claimed its supplier had misrepresented certain material facts on the availability, allocation, and price of microwave ovens. When the supplier terminated its distributorship agreement for the ovens (which was terminable at will), the retailer went out of business. The Eighth Circuit, while recognizing the *Lewis* exception, held plaintiff was entitled only to out-of-pocket damages. The court quite properly reasoned there was no need to consider *Lewis* because recovery of the out-of-pocket loss would effectively restore the retailer to the position that it would have been in but for the misrepresentation. Here, unlike *W.K.T.*, Mesabi has no out-of-pocket damages. The Eighth Circuit was not confronted with the situation we have here where application of the out-of-pocket rule will leave the plaintiff without recompense. Goodrich argues that Mesabi did have an appreciable out-of-pocket loss but chose, as a matter of trial tactics, not to prove it. But again, we do not review fact issues. We take it to be established that there was no out-of-pocket loss.

The out-of-pocket rule works best in a transactional context of "the purchaser in buying property in reliance upon the fraudulent representation of the seller." *Lowrey*, 251 Minn. at 127, 86 N.W.2d at 501. In other words, the rule works well where the plaintiff has received property in reliance on the misrepresentation, as in sales of goods or real estate, and the property received serves as the reference point for measuring the damages. The rule works less well where, as in this case, defendant's misrepresentation prevents plaintiff from taking measures to protect the value of property it already has.

In this case plaintiff did not receive any goods of lessened value because of the misrepresentation. Rather, somewhat like *Lewis*, plaintiff was led to believe by the misrepresentation that it had something it did not have, namely an assured supply of tires for its business. Because of this misrepresentation, the trier of fact has found that plaintiff lost its business. This direct economic loss is not measurable by the out-of-pocket rule; application of that rule would leave plaintiff's loss uncompensated and would not restore plaintiff to its former position. Under these circumstances, the trial court properly allowed plaintiff to recover its economic loss from the destruction of the business, measured by the value of the business before the misrepresentation (based on capitalization of past earnings) and the value after. We answer the first certified question "yes."

## II.

The second certified question asks if the consequential economic loss damages include lost future profits.

In this case plaintiff sustained a direct economic loss but the preferred out-of-pocket rule was not workable to measure that loss and a different measurement was needed. The method to be used will depend on the circumstances, on the need to avoid speculation balanced by the difficulties of proof common in these situations. Thus, in the case of the interruption of an established business, damages may at times be determined by loss of profits. *See Hendrickson v. Grengs*, 237 Minn. 196, 54 N.W.2d 105 (1952). Lost profits may also measure the destruction of a new, unestablished business. *See Cardinal Consulting Co. v. Circo Resorts*, 297 N.W.2d 260, 266–69 (Minn.1980). In this case, we have the destruction of an established business. Plaintiff chose to measure that loss by

showing the value of its business as a going concern based on capitalization of past earnings and the loss in that value after the misrepresentation. This method, we suppose, undertakes to show that the business would have continued indefinitely with a new supplier and would have had earnings in the future much as it had in the past. This is not the same thing, however, as asking for future lost profits. The jury was not asked to determine and award the profit lost on tires Mesabi would have sold in the future; rather, the jury was asked to determine the difference in value of the business before and after the misrepresentation.

Before us, neither party now contends that Mesabi asked for lost future profits as such. Indeed, Goodrich does not argue that Mesabi may not establish its economic loss by proving loss of an established business as it did. Goodrich argues, rather, that plaintiff's proof that it could have obtained OTR tires from another distributor in July 1985 if it had then known the rug was to be pulled was pure conjecture. In other words, defendant is not arguing to us (although it may be to the trial judge) that the damages themselves are speculative, but that the proof of liability for damages is speculative. But, as we have already noted, this is a factual dispute to be addressed to the trial judge, not to us.

We think it the better part of valor not to answer the second question. As argued in this court, the relevance of the question has become doubtful and we are unsure of the consequences of any answer we might give. With what we have already said in answering the first question and in discussing the second, we believe the concerns set out in the Certification Order have been met.

One final thought. We have some reservations about the parties' characterization of Mesabi's economic loss as "consequential." The term "consequential damages" usually appears in breach of contract actions and refers to those items of damages which, because of particular circumstances, are to be distinguished from "general" damages. *See, e.g.,* Uniform Commerical Code, Minn.Stat. § 336.2–715 (1986); *Kleven v. Geigy Agricultural Chemicals,* 303 Minn. 320, 227 N.W.2d 566 (1975). In this case of tortious misrepresentation, plaintiff's general damages are its claimed economic loss. In this context, to characterize these damages as "consequential" may have misleading connotations.

First certified question answered as above.