**GOPHER OIL COMPANY, INC.,**
**a Minnesota corporation,**
**Appellee,**

v.

**UNION OIL COMPANY OF CALIFORNIA, a California corporation, Appellant.**

**GOPHER OIL COMPANY, INC.,**
**a Minnesota corporation,**
**Appellee,**

v.

**UNION OIL COMPANY OF CALIFORNIA, a California corporation, Appellant.**

**GOPHER OIL COMPANY, INC.,**
**a Minnesota corporation,**
**Appellant,**

v.

**UNION OIL COMPANY OF CALIFORNIA, a California corporation, Appellee.**

Nos. 91–1159, 91–1430, 91–1854.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1991.

Decided Jan. 28, 1992.

Joe Walters, Minneapolis, Minn., argued (Anne Meredith–Will on the brief), for appellant.

Brian O'Neill, Minneapolis, Minn., argued (Delmar Ehrich and Sandi Zellmer on the brief), for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT and ROSS, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

These appeals arise from an action brought by Gopher Oil Company (Gopher) to recover damages, environmental cleanup costs and attorney fees from the defendant

Union Oil Company of California (Union) based on common law fraud under Minnesota state law, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) of 1980, §§ 107, 113, 42 U.S.C. §§ 9607, 9613 (1988) and the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. §§ 115B.04, 115B.08 (1991).[1]

After a trial by jury and the adoption and modification of the jury verdict, which the trial judge considered as advisory, on the MERLA and CERCLA claims, the district court entered the following orders and judgments:

1. Order and judgment, under Fed. R.Civ.P. 54(b), dated November 20, 1990 that Gopher recover cleanup costs in the sum of $423,272.81 plus prejudgment interest ($93,572.34) and postjudgment interest ($4,794.00) against Union: declaring Union further liable for 100% of necessary response and removal costs and retaining jurisdiction over the fraud claim for future determination of damages after substantial cleanup of the site.

2. Order dated February 19, 1991 granting attorney fees and other expenses to Gopher, under CERCLA and MERLA, in the sum of $559,380.52. That order also:

a) provided for denial of Union's motion for a new trial.

b) granted Gopher's motion for a 28 U.S.C. § 1292(b) (1988) certification for interlocutory appeal of that part of the judgment retaining jurisdiction to award future damages on the fraud claim, rather than entering total damages pursuant to the jury's verdict.

Union appeals from the damage award, the attorney fee award and the declaration of 100% liability against Union (Case Nos. 91–1159 and 91–1430).

Gopher appeals under 28 U.S.C. § 1292(b), with the permission of this court, contesting the trial court's deferral in awarding final judgment on the fraud claim (Case No. 91–1854).

We have appellate jurisdiction over Union's appeals under 28 U.S.C. § 1291 (1988), as appeals from final orders and judgments. We have jurisdiction over Gopher's appeal under 28 U.S.C. § 1292(b). Federal jurisdiction over plaintiff's claims rests on 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 9613 (CERCLA).

On these appeals, Union challenges: (1) the district court's denial of Union's motion for a new trial on the fraud issue, alleging erroneous jury instructions and lack of evidentiary support for the jury verdict; (2) the district court's order holding Union one-hundred percent responsible for cleanup costs under both CERCLA and MERLA; and (3) the district court's award of attorney fees to Gopher.

Gopher asserts error in the trial court's refusal to award Gopher full damages on the fraud claim pursuant to the jury verdict.

We affirm on all appeals, but remand for reconsideration of attorney fees and suggest calculation of fraud damages as expeditiously as possible.

## I. BACKGROUND

From the early 1900s to 1980, W.H. Barber Company (Barber) owned and operated a bulk oil and chemical facility on a five-acre site located in Minneapolis, Minnesota. Barber operated as a subsidiary of the Pure Oil Company (Pure Oil). Upon the merger of Pure Oil and Union in 1965, Barber became a wholly-owned subsidiary of Union. Barber primarily blended petroleum products and packaged them for resale. From the early 1960s to 1980, American Mineral Spirits Company (AMSCO), a division of Union, shared the site with Barber and utilized Barber employees for the blending and packaging of industrial chemicals.

Prior to 1980, the Barber and AMSCO operations resulted in numerous leaks, spills and intentional dumpings of oil and industrial chemicals. In preparing the Barber site for sale, Union took steps to conceal the evidence of years of accumulated

---

**1.** State and federal "Superfund Acts."

deposits of oil and chemicals on the site. It removed contaminated ground and replaced it with landscaping gravel. Other contaminated areas were simply covered over with the gravel.

Gopher, a Minnesota petroleum products processing company, expressed an interest in purchasing the site in late 1980. Union representatives informed Gopher of a 1977 spill of 10,000 gallons of turpentine and another spill of approximately 300 gallons of lubricating oil. Union did not inform Gopher that Barber and AMSCO's normal operating procedures, particularly prior to 1970, resulted in continual minor leaks and dumpings on the site. Further, Gopher asserts that Union assured Gopher on three occasions that no pollution problems existed with the site. A Union internal memorandum, however, noted the need for pollution control and recommended sale of the site rather than a substantial investment in environmental and safety concerns.

Gopher knew of a September 1980 letter, addressed to Barber, containing a request from the City of Minneapolis that Barber conduct soil borings on the site in relation to the 1977 turpentine spill. Union representatives suggested that the request resulted from political pressure. Gopher was able to have the request revoked.

Representatives of Gopher visited the site twice before the purchase and during a guided tour viewed the storage tanks, buildings and a tunnel. They noticed some minor soil discoloration from oil spills, but gravel obscured much of the contaminated ground and any chemical spills would have been primarily colorless. Gopher had free access to Union's records for investigation, but did not utilize the opportunity.

Fred Bame (Bame), president of Gopher, contacted officials from the Minnesota Department of Inspections and the Minnesota Pollution Control Authority (MPCA) to in-

quire about any pollution problems at the site. These officials informed Bame about the two major spills and the tunnel filled with oil-contaminated water. They did not indicate any other major problems with the site.

Gopher completed the purchase in November of 1980. The purchase agreement contained a clause purporting to transfer the land and facilities in an "as is" condition [2] and a clause stating that none of the warranties made in the agreement contained any untrue statement of material facts or omitted any material fact, the omission of which would be misleading.[3] At the time of closure, CERCLA was not in force and CERCLA liability could not have been contemplated by either party.

After the sale, Gopher fixed up the plant and replaced leaky valves and tanks. It continued the operations for approximately three years. Gopher asserts that it ran a clean operation, controlling any leaks and confining any spills to concrete floors for immediate cleanup.

In late 1983 and early 1984, the MPCA inspected the site and ordered Gopher to investigate. Soil borings and other tests revealed that the site contained substantial pollution. Gopher spent $423,272.81 on cleanup costs, pursuant to a 1986 compliance agreement with the MPCA.

## II. THE PROCEEDINGS

In January of 1988, Gopher filed suit against Union, seeking damages for Union's fraud and for recovery of its cleanup costs. The trial before the district court and a jury took place between June 25, 1990 and July 11, 1990. Union did not move for a directed verdict at the close of all the evidence.

The district court utilized the *Minnesota Jury Instruction Guide* (3d ed.) in in-

---

**2.** Article VII of the purchase agreement provides:

The land, building, tanks, fixtures, machinery, equipment and vehicles sold under this agreement are being sold in an "as is" condition, excluding all other warranties, specifically excluding warranties of merchantability and fitness for any particular purchase [sic].

**3.** Article XX of the purchase agreement provides:

None of the representation[s] or warranties made by BARBER, in this Agreement or to be furnished to GOPHER at time of closing, shall contain any untrue statement of material fact, or omit any material fact, the omission of which would be misleading.

structing the jury. It also incorporated Union's requested instructions on the elements of fraud and the standard of proof for fraud. Union not only failed to object to the instructions, but indicated to the district court that they were "error free." The jury found that Union had made material misrepresentations to Gopher about the condition of the site to induce Gopher to purchase the site. It also issued an advisory verdict finding Union one hundred percent responsible for the cost of environmental cleanup.[4]

The district court adopted the jury's determination that Union had defrauded Gopher and retained jurisdiction over the fraud claim in order to assess the correct measure of out-of-pocket expenses after cleanup was completed and the property was revalued. After making detailed findings, the district court also allocated to Union one hundred percent of the liability for cleanup costs under CERCLA and MERLA and awarded Gopher $423,272.81 in past cleanup costs plus interest. The district court also entered judgment in Gopher's favor on the CERCLA and MERLA claims in the order and judgment dated November 20, 1991. In an order dated February 15, 1991, the district court awarded $559,380.52 in attorney fees to Gopher and denied Union's motion for a new trial and amendment of the November 20, 1990 judgment.

Union filed appeals from the November 20 judgment and the February 15 order. The February 15 order also permitted Gopher to petition this court for interlocutory appeal, under 28 U.S.C. § 1292(b). As we have observed, we consented to hear the interlocutory appeal of the district court's deferral of damages on the fraud claim. The appeals, Nos. 91–1159 (Union's appeal of the November 20 judgment imposing liability on Union), 91–1430 (Union's appeal of the February 15 judgment awarding at-

---

**4.** At the conclusion of the trial the jury returned a Special Verdict which read:

We, the jury in the above entitled action, return the following answers to the questions of fact presented to us.

PART I—MISREPRESENTATION

1. Before plaintiff Gopher Oil purchased the site, did defendant Union Oil misrepresent material facts to Gopher Oil about the condition of the site?

Yes
. . . .

2. Did plaintiff Gopher Oil know, or by the exercise of reasonable care should it have known, before January 11, 1982, that defendant Union Oil misrepresented facts about the condition of the site?

No
. . . .

3. When defendant Union Oil misrepresented facts to plaintiff Gopher Oil, did Union Oil know those facts were false or assert those facts without knowing whether they were true or false?

Yes
. . . .

4. Did plaintiff Gopher Oil rely on defendant Union Oil's misrepresentation about the condition of the site?

Yes
. . . .

5. Did defendant Union Oil make the misrepresentation about the condition of the site (1) with the intent to induce plaintiff Gopher Oil to act in reliance upon it, or (2) was plaintiff Gopher Oil justified in relying on defendant Union Oil's misrepresentation about the con-

dition of the site? If you find either (1) or (2) is true, your answer to Question No. 5 is "Yes," if you find neither (1) nor (2) is true, your answer to Question No. 5 is "No."

Yes
. . . .

6. Did defendant Union Oil's misrepresentations about the condition of the site directly cause plaintiff Gopher Oil to suffer damages:

Yes
. . . .

7. What amount of money will fairly compensate plaintiff Gopher Oil for the damages it suffered· as a direct result of defendant Union Oil's misrepresentation regarding the condition of the site?

$1,823,272.81

PART II—CLEAN–UP RESPONSIBILITY

8. As part of its purchase of the Thornton Avenue site in 1980, did Gopher Oil Company agree to assume the risk of environmental clean-up obligations and to hold W.H. Barber (Union Oil) Company harmless for the cost of any such clean-up?

No.

Please answer Question No. 9.

9. Taking all of the responsibility for response costs to be incurred in the future to be 100%, what percentage of responsibility for those response costs do you attribute to:

| | |
|---|---|
| 0% | Gopher Oil |
| 100% | Union Oil |
| 0% | Barber Oil |
| 100% | |

Order of Oct. 12, 1990 at 1–4.

torney fees to Gopher and denying Union's motion for a new trial) and 91–1854 (Gopher's interlocutory appeal of the certified question) have been consolidated.

## III. DISCUSSION

### A. The Fraud Claim

Union asserts that the district court abused its discretion in denying Union's motion for a new trial. It contends that the district court erred in giving jury instructions and submitting a special verdict form, which erroneously omitted a requirement that the jury find justified reliance by Gopher on Union's misrepresentations. Union also contends that the instructions erroneously required proof by a preponderance of the evidence rather than by clear and convincing evidence, as required under Minnesota law. As we have observed, Union failed to object to, and actually expressly acquiesced on the record to, the correctness of the jury instructions.[5] Union's proposed jury instructions and special verdict form did not include a requirement that the jury find justifiable reliance, and expressly called for proof by a preponderance of the evidence, which Union now asserts is an erroneous standard.[6]

 Union's failure to make a timely objection to the instructions limits the appellate court to correcting only plain errors as necessary to avoid a miscarriage of jus-

tice. *See Lusby v. T.G. & Y. Stores, Inc.,* 796 F.2d 1307, 1311–12 (10th Cir.), *cert. denied,* 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986) (citing *United States v. Young,* 470 U.S. 1, 6, 14–15, 105 S.Ct. 1038, 1041–42, 1045–46, 84 L.Ed.2d 1 (1985)). The instruction and special verdict form stated that the jury must find justified reliance on the misrepresentation or that the misrepresentation was made with intent to induce reliance[7] (thus, justifiable reliance may be inferred from actual reliance upon misrepresentations made with intent to induce reliance). *Nave v. Dovolos,* 395 N.W.2d 393, 397–98 (Minn.Ct.App. 1986); *Weise v. Red Owl Stores, Inc.,* 175 N.W.2d 184, 187 (Minn.1970); *see also Berryman v. Riegert,* 175 N.W.2d 438, 442 (Minn.1970); *Estate of Jones v. Kvamme,* 430 N.W.2d 188, 195 (Minn.Ct.App.1988), *aff'd in relevant part,* 449 N.W.2d 428 (Minn.1989); *St. Croix Printing Equip., Inc. v. Rockwell Int'l Corp.,* 428 N.W.2d 877, 881–82 (Minn.Ct.App.1988). Also, the preponderance of the evidence standard of proof is sufficient in this case, where Gopher seeks damages for fraud, not rescission of a written agreement. *Martin v. Guarantee Reserve Life Ins. Co.,* 155 N.W.2d 744, 748 (Minn.1968); *Sievert v. La Marca,* 367 N.W.2d 580, 588–89 (Minn.Ct. App.1985).

The circumstances of this case do not rise to the level of plain error. The district

---

5. The transcript of the July 10, 1990 proceedings before United States District Judge David S. Doty states in part:
 THE COURT: And was any instruction that should be given that was not given or hasn't been ruled on?
 [Attorney for Union]: You can say your instructions are error free.
 Tr., vol. VIII at 120–21.

6. Union Oil's proposed Jury Instructions, Request No. 8, Elements of Fraudulent Concealment, required that:
 To establish fraud based upon concealment of a fact or facts, Gopher must show each of the following by a preponderance of the evidence:
 . . . .
 *FIFTH,* that Gopher must have been unaware of the fact and would not have acted as it did if it had known of the concealed or suppressed fact; . . . .
 Union Oil's Special Verdict Form, Question No. 7, states in part: "was Gopher unaware of

the fact and would Gopher not have acted as it did if it had known of the concealed of [sic] suppressed fact?"

7. Jury Instruction No. 15 states in part:
 Plaintiff's claim against the defendant has five essential elements, as follows:
 . . . .
 FOURTH, that the misrepresentation was made with the intent to induce the plaintiff to act in reliance upon it, or, that the plaintiff was justified in relying on the misrepresentation, . . . .
 Special Verdict Form, Question No. 5, states in part:
 Did defendant Union Oil make the misrepresentation about the condition of the site (1) with the intent to induce plaintiff Gopher Oil to act in reliance upon it, or (2) was plaintiff Gopher Oil justified in relying on defendant Union Oil's misrepresentation about the condition of the site?

court based its instructions on the *Minnesota Jury Instruction Guide* (3d ed.) and incorporated Union's requested instructions on the elements of fraud and the standard of proof for fraud. Union's proposed jury instructions and special verdict form contained the language it now contends is erroneous. The instructions did not mislead the jury. Accordingly, we reject the claims of plain error. *See Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411, 416 (8th Cir.1985); *Federal Crop Ins. Corp. v. Hester*, 765 F.2d 723, 727 (8th Cir.1985).

■ Union also alleges that the verdict was against the clear weight of the evidence because, the "as is" clause in the purchase agreement and Gopher's experience in the oil processing industry conferred upon Gopher a duty to investigate the property for contamination prior to purchase. Also, the only evidence of Union's alleged fraud came from the testimony of Gopher's owner regarding assurances that the property was pollution free, allegedly made by Union's representatives prior to the sale.

■ Union's failure to move for a directed verdict or judgment notwithstanding the verdict operated as a waiver of Union's right to challenge the jury's findings as unsupported by substantial evidence. Thus, this court's review is limited to whether the district court abused its discretion in denying Union's motion for a new trial or whether the denial was erroneous as a matter of law because there was an absolute absence of evidence to support the jury's verdict. *Smith v. Ferrel*, 852 F.2d 1074, 1075–76 (8th Cir.1988); *Harris v. Zurich Ins. Co.*, 527 F.2d 528, 529–30, 530 n. 1 (8th Cir.1975).

■ Although the purchase agreement expressly foreclosed reliance upon prior representations, the parol evidence rule does not operate to preclude a showing of fraudulent inducement to enter the agreement. *See Northern Assurance Co. v. Grand View Bldg. Ass'n*, 183 U.S. 308, 330, 22 S.Ct. 133, 141, 46 L.Ed. 213 (1902); *Walden v. Skinner*, 101 U.S. 577, 585, 25 L.Ed. 963 (1879); *Union Mut. Life Ins. Co. v. Wilkinson*, 80 U.S. (13 Wall.) 222, 231–

36, 20 L.Ed. 617 (1871); *Clements Auto Co. v. Service Bureau Corp.*, 444 F.2d 169, 178–79 (8th Cir.1971); *National Equip. Corp. v. Volden*, 252 N.W. 444 (Minn.1934); *Ganley Bros., Inc. v. Butler Bros. Bldg. Co.*, 212 N.W. 602 (Minn.1927). Here, Gopher presented evidence that Union knew of the site contamination, that Union attempted to conceal the contamination and affirmatively misrepresented the material fact of contamination to Gopher, and that Gopher relied upon that misrepresentation in entering the transaction. The substantiality of the evidence is not in question, and we cannot say that the district court abused its discretion in denying the new trial or that, as a matter of law, there was a complete absence of evidence to support the jury verdict. Accordingly, we affirm the district court's denial of Union's motion for a new trial.

## B. Allocation of Liability

Union contends that the district court erred in apportioning one hundred percent of the liability for cleanup expenses under CERCLA and MERLA to Union. It argues that the apportionment was inequitable because CERCLA allows for joint and several liability between responsible parties, 42 U.S.C. § 9613(f)(1), the "as is" clause in the purchase agreement transferred liability from Union to Gopher, and CERCLA preempts the claim under MERLA.

■ Allocation of liability under CERCLA and MERLA is an equitable determination, in which the district court must make its own factual findings and legal conclusions. *See United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 749 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). We review the district court's factual findings under a clearly erroneous standard and its applications of law de novo. *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544, 550–51 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991).

The district court found that:

Union Oil knew of and is responsible for the leaking, spilling and dumping of oil and industrial chemicals resulting in contamination of the site. Gopher Oil did not materially contribute to the contamination and did not have specific knowledge of the contamination until investigations and testing were conducted in 1985. The contamination Union Oil caused is extensive and of a toxic nature. The contamination Union Oil caused evidences a lack of care exercised in the blending, packaging and disposing of oil and industrial chemicals by Union Oil.

Order of Oct. 12, 1990 at 12–13.

Based upon these factual findings, the district court held Union one hundred percent liable for future cleanup expenses and ordered Union to reimburse Gopher for the $423,272.81 in reasonable and necessary cleanup expenses that it had expended, plus prejudgment and postjudgment interest and attorney fees totaling $559,380.52. Order of Nov. 20, 1990 at 2, Order of Feb. 15, 1991 at 16, 18.

■ In light of the evidence submitted by Gopher to show that Union was responsible for the contamination, the district court's finding that Union Oil knew of and was responsible for the contamination must be sustained. Consequently, the district court's allocation, based on its own factual findings and the advisory jury verdict, to Union of one hundred percent of the liability for cleanup expenses under CERCLA and/or MERLA will stand.

■ We reach this result without deciding the effect of the "as is" clause in the purchase agreement on the apportionment of liability. Because Union fraudulently induced Gopher to enter into the purchase agreement, that agreement is ineffective to transfer Union's liability for environmental cleanup expenses to Gopher.

We also reach this result without deciding whether an action brought under CERCLA section 107, 42 U.S.C. § 9607, preempts a contribution claim under MERLA. *See* CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1). The district court's allocation of liability rested alternatively on CERCLA and/or MERLA. A decision that the claim under MERLA is preempted would reduce neither the extent nor the amount of Union's liability.

C. Award of Attorney Fees

■ Union contends that the district court erred in awarding attorney fees to Gopher under CERCLA and MERLA for both the statutory claims and the common law fraud claim.

CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), authorizes the award of attorney fees and expenses to a prevailing private party in a response cost recovery action. *General Elec. Co. v. Litton Indus. Automation Sys., Inc.,* 920 F.2d 1415, 1421–22 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). MERLA section 115B.14 expressly allows the award of "costs, disbursements and reasonable attorney fees and witness fees" to the prevailing party in a contribution action. Minn.Stat. § 115B.14 (1990). Thus, an award of attorney fees incurred in pursuing the CERCLA and MERLA claims is appropriate.

Union questions the propriety of the award of attorney fees incurred in pursuing the fraud claim because, absent statutory authorization, the prevailing party is not entitled to recover attorney fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616–17, 44 L.Ed.2d 141 (1975). In this case, the successful pursuit of the fraud claim served a purpose overriding the CERCLA and MERLA claims by insulating plaintiff from contribution and making the "as is" clause inapplicable and irrelevant.

Under these circumstances, the defendant should not incur liability for fees related to the fraud claim, notwithstanding the interrelationship of that legal work with the environmental claims. Accordingly, we remand for a redetermination or an apportionment of attorney fees to exclude work related to the fraud litigation. Such determination will rest with the discretion of the trial court. *See Moore v. City of Des Moines,* 766 F.2d 343, 346 (8th Cir. 1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct.

805, 88 L.Ed.2d 781 (1986). The fee award otherwise seems reasonable.

### D. Retention of Jurisdiction over the Fraud Damages Award

This court granted permission for Gopher to take an interlocutory appeal of a certified question, pursuant to 28 U.S.C. § 1292(b),[8] concerning the district court's retention of jurisdiction over Gopher's fraud claim. *Gopher Oil Co. v. Union Oil Co. of Cal., Inc.*, 955 F.2d 519 (8th Cir. 1991) (order granting permission to appeal). The district court certified the following question:

> whether it is proper for the court to retain jurisdiction over the fraud claim and determine damages due thereunder at some future date, or whether this court should have immediately awarded Gopher Oil damages in accordance with the jury's verdict.

Order of Feb. 15, 1991 at 7–8.

The jury awarded Gopher $1,823,272.81 as compensation for the loss occasioned by Union's fraudulent misrepresentation. Of this sum, $1,400,000 represented the purchase price of the site and $423,272.81 represented the cleanup costs incurred by Gopher. The district court did not enter judgment on this amount. Instead, it retained jurisdiction in order to adjust the award to compensate for the increased value of the land after completion of cleanup. Order of Nov. 20, 1990 at 2.

 The substantive law of the place where the wrongful act occurred governs the measure of damages in a fraud action. *Lowrey v. Dingmann*, 86 N.W.2d 499, 501–02 (Minn.1957). Minnesota law allows the recovery of "out-of-pocket" damages in a fraud action. *Johnson Bldg. Co. v. River Bluff Dev.*, 374 N.W.2d 187, 195 (Minn.Ct.App.1985) (citing *Lewis v. Citizens Agency of Madelia, Inc.*, 235 N.W.2d 831, 835 (Minn.1975)). The "out-of-pocket" loss is the difference between what the

injured party parted with and what was received in the transaction. *id.* (citing *Strouth v. Wilkison*, 224 N.W.2d 511, 514 (Minn.1974)). Thus, the measure of damages amounts to the difference between the actual value of the property received and the purchase price paid for it, together with any damages naturally and proximately caused by the fraud. *See Peterson v. Johnston*, 254 N.W.2d 360, 362 (Minn. 1977); *Nave*, 395 N.W.2d at 398. The Minnesota Supreme Court has recognized an exception to the general rule when out-of-pocket damages fail to return the parties to the status quo. *Hughes v. Sinclair Mktg., Inc.*, 389 N.W.2d 194, 199 (Minn. 1986) (citing *Lewis v. Citizens Agency of Madelia, Inc.*, 235 N.W.2d 831, 835 (Minn. 1975)). It has also considered circumstances occurring after the sale in computing out-of-pocket damages suffered in a fraudulent misrepresentation action. *Strouth v. Wilkison*, 224 N.W.2d 511, 514 (Minn.1974) (action to recover damages from contractor who abandoned construction project, which was subsequently completed by another contractor).

 Gopher, in its appeal, contends that the district court's retention of jurisdiction and failure to enter judgment on the jury's damage award was erroneous under Minnesota law and in contravention of its seventh amendment right to a jury trial on the issue of damages.

The appropriate time to value contaminated property in order to calculate out-of-pocket damages incurred by the fraudulently induced purchaser, when the property is awaiting cleanup pursuant to a CERCLA or MERLA compliance plan, represents an issue of first impression under Minnesota law. *See* Order of Oct. 12, 1990 at 16. The jury awarded damages based upon the value of the site at the time of purchase, $0 because of the contamination. The district court considered that assessment to be erroneous, in light of the effect that the

---

**8.** 28 U.S.C. § 1292(b) provides in pertinent part:
 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of

law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

cleanup activities, dictated by CERCLA and MERLA, will have in increasing the value of the property. An assessment of value at the time of purchase would allow a windfall to Gopher because it would receive the full purchase price of the site and also retain title to the decontaminated piece of land. Thus, the district court decided to calculate the out-of-pocket damages by determining the difference between the purchase price and the value of the site after completion of cleanup. Order of Oct. 12, 1990 at 20; Order of Nov. 20, 1990 at 2. Calculation of damages pursuant to this formula necessitated retention of jurisdiction until completion of cleanup. *Id.*

This court must undertake de novo review of a district court's determination of state law. *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190, *mot. denied,* —— U.S. ——, 111 S.Ct. 2794, 115 L.Ed.2d 969 (1991). We hold that, in consideration of the novel circumstances of this case, the district court properly adapted Minnesota's out-of-pocket fraud damages rule to a case where the value of contaminated property may be increased subsequent to the sale by mandatory cleanup activities pursuant to CERCLA or MERLA. Accordingly, the calculation of out-of-pocket damages correctly may be based upon the difference between the purchase price of the contaminated site and the value of the site after completion of cleanup.

■ A district court may exercise its discretion to cure a verdict that is against the weight of evidence, or will result in the miscarriage of justice, without impinging on the right to a trial by jury. *Slatton v. Martin K. Eby Constr. Co.,* 506 F.2d 505, 508 (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975); *Altrichter v. Shell Oil Co.,* 263 F.2d 377, 380 (8th Cir.1959). Thus, the district court may properly withhold judgment on the jury verdict and substitute a figure based upon the above formula. It would be undesirable, however, to retain jurisdiction for the amount of time necessary to complete the cleanup.

The district court and the parties need not await the substantial completion of cleanup in the assessment of damages. The award should be made as promptly as possible. We presume that expert testimony presented by the parties, or an expert witness called by the court, *see* Fed.R.Evid. 706, may assist the court by estimating the site value on completion of the cleanup and other matters relating to this damage calculation.

Accordingly, we remand for calculation of the fraud damages to which Gopher is entitled, taking into account the projected value of the site after the projected cleanup and any other matters appropriate to. the final assessment of fraud damages. Valuation of the property will be based upon the record, supplemented by additional expert testimony if necessary.

## IV. CONCLUSION

We affirm the district court's determination that Union fraudulently induced Gopher into the purchase of the contaminated site and that Union is one hundred percent liable for cleanup costs incurred pursuant to CERCLA and MERLA. We remand for reassessment of attorney fees. We affirm the order relating to deferral of computation of fraud damages and remand that issue for calculation of fraud damages consistent with this opinion.