STATE TRUST COMPANY OF NEW YORK v. CITY OF DULUTH.[1]

December 2, 1897.

Nos. 10,757—(147).

**Duluth Gas & Water Company — Village Ordinance — "Good and Wholesome Water" — Forfeiture — Suspension of Water Rentals.**

The village (now city) of Duluth, for the purpose of furnishing the village with a supply of water, passed an ordinance granting to the water company the right to construct and maintain water works and to lay mains and place fire hydrants in the streets and other public grounds of the village. The water to be furnished was to be "good and wholesome" and suitable for domestic purposes. It was stipulated that the company should erect and maintain a certain number of fire hydrants to supply to the village water to be used exclusively for purposes of fire protection, for which it was to pay the company a stipulated water rental. The ordinance also prescribed a schedule of water rates, which the company was authorized to charge private consumers. Section 6 of the ordinance provides as follows:

"In the event that said gas and water company, after said works shall have been in successful operation, suffer a suspension of a supply of good and wholesome water, thereby causing an insufficiency for domestic and other purposes for a period exceeding sixty days, then in that event said company shall forfeit all exclusive franchise herein granted pertaining to it as a gas and water company, unless such suspension shall have been caused by the act of God, by public enemies or unavoidable accident, and during such failure of supply all water rentals shall be suspended."

*Held*, that inasmuch as the granting of the franchise to the water company was the exercise of a governmental function, and as the business in which the water company was about to engage was one "affected with a public interest," it was competent for the village in granting the franchise to incorporate into it a condition or enforceable penalty to insure performance of its public duty by the grantee of the franchise; also, that the provision as to the suspension of water rentals during the default of the company in the performance of this duty is valid and enforceable, although the same provision in a contract between private individuals might be construed as a mere nonenforceable penalty, and not as stipulated damages.

**Same — Water Supplied through Fire Hydrants.**

But this provision must be construed as only "suspending" the water

1 Reported in 73 N. W. 249.

70 M.—17

rentals of those to whom inadequate or improper service is furnished. Hence, if the water company furnishes to the city, through their fire hydrants, a proper supply of water for fire-protection purposes, the fact that the company had failed to furnish the private consumers a quality of water suitable for domestic purposes would be no defense to an action against the city to recover the rentals of fire hydrants.

Action in the district court for St. Louis county to recover $5,130 as rent due to the Duluth Gas & Water Company upon 272 fire hydrants maintained and supplied by it with water between October 1, 1896, and January 1, 1897. The answer set up as a defense that the water company had suffered a suspension of a supply of good and wholesome water, thereby causing an insufficiency for domestic or other purposes, for a period exceeding sixty days prior to October 1, 1896, and during the whole period from that time to January 1, 1897, and that such suspension was not caused by the act of God. To this answer plaintiff demurred. From an order, Moer, J., sustaining the demurrer defendant appealed. Affirmed.

*J. B. Richards,* for appellant.

The damages for the breach being liquidated in the contract there is no room for proof or allowance of actual damages; and the sum fixed as damages in case of breach, in the contract itself, must govern and control. Fasler v. Beard, 39 Minn. 32; Pomeroy, Eq. Jur. §§ 440, 442, 445. An ordinance valid when passed by the common council and accepted by the grantees of the franchise, becomes a contract, protected by the constitutional prohibition of laws impairing the obligation of contracts. Nash v. Lowry, 37 Minn. 261; City v. Chicago, 63 Minn. 330; McRoberts v. Washburne, 10 Minn. 8 (23); Trustees v. Woodward, 4 Wheat. 518. It was evidently the intention of the parties to make this a case of liquidated damages in using the terms expressed in said section 6. White v. Dingley, 4 Mass. 433; Wafer v. Mocato, 9 Mod. 112. It is no answer to appellant's position to say that the city admits that it receives some benefit for fire purposes through the service of foul water furnished. The contract is entire. City v. Winfield, 51 Kan. 70; Winfield v. City, 51 Kan. 104.

Section 6 of the ordinance refers to both quality and to quantity.

It is a proper case for liquidated damages. 1 Pomeroy, Eq. Jur. § 445, 5th Rule; 29 Am. & Eng. Enc. 21; Bush v. Artesian (Idaho) 43 Pac. 69; House v. Houston, 88 Tex. 233; Eaton v. Fairbury, 37 Neb. 546; Britton v. Green, 81 Wis. 48; Sainter v. Ferguson, 7 C. B. 716; Pierce v. Fuller, 8 Mass. 223; Fisk v. Fowler, 10 Cal. 513; California v. Wright, 6 Cal. 258; Streeter v. Rush, 25 Cal. 67; Parr v. Village, 112 N. Y. 246; Clement v. Cash, 21 N. Y. 253; Kemp v. Knickerbocker, 69 N. Y. 45, 57; Cotheal v. Talmage, 9 N. Y. 551; Fasler v. Beard, supra.

*Francis W. Sullivan*, for respondent.

It is the consideration to be paid, not the subject or thing to be performed, that determines the class to which a contract belongs. Lucesco v. Brewer, 66 Pa. St. 351; 2 Parsons, Cont. 517; Norris v. Harris, 15 Cal. 226. If the part to be performed by one party consists of several distinct items, and the price to be paid by the other is apportioned to each item to be performed or left to be implied by law, such a contract will generally be held to be severable. McGrath v. Cannon, 55 Minn. 457; Potsdamer v. Kruse, 57 Minn. 193; Spear v. Snider, 29 Minn. 463; Leeds v. Little, 42 Minn. 414; Taylor v. Marcum, 60 Minn. 292; Peterson v. Mayer, 46 Minn. 468; Rugg v. Moore, 110 Pa. St. 236, 241; Indiana v. Koons, 105 Ind. 507; Higham v. Harris, 108 Ind. 246. Breach by defendant in the performance of any of these contracts imposes upon it the duty of setting up such breach and alleging what damages it has sustained. Sykes v. City, 60 Minn. 442; Wyley v. Inhabitants, 150 Mass. 426; U. S. v. Borough, 176 Pa. St. 439; Burlington v. City, 43 Kan. 725. Courts may enforce specific performance of the contract of the water company, in case any default is made in furnishing water that is not good and wholesome. City v. Burlington, 86 Iowa, 266.

Liquidated damages were not provided in section 6 of the ordinance for any breach thereof. Sykes v. City, supra; Carter v. Strom, 41 Minn. 522; Lyman v. Babcock, 40 Wis. 503; Kemble v. Farren, 6 Bing. 141; 13 Am. & Eng. Enc. 865, note 2; Clark, Cont. 602; Beach, Mod. Law Cont. § 629; Tayloe v. Sandiford, 7 Wheat. 13; Jaquith v. Hudson, 5 Mich. 123; Williston v. Mathews, 55 Minn. 422; Sedgwick, Dam. § 389; 2 Greenleaf, Ev. § 257. If the inten-

tion of the parties is of equivocal interpretation the provision will be construed to be a penalty. 13 Am. & Eng. Enc. 860, note 3; 1 Pomeroy, Eq. Jur. § 444; Pennypacker v. Jones, 106 Pa. St. 237; City v. Cullinane, 4 Okl. 457; Fisher v. Barrett, 4 Cush. 381. If the provision applies to the entire contract and was in fact a valid agreement for a definite sum for a breach of any portion of the contract, yet, by the acceptance of a part performance, the provision has been changed from liquidated damages to an agreement in the nature of a penalty, under which only such actual damages can be recovered as resulted from the partial breach of the contract. Wibaux v. Grinnell, 9 Mont. 154; Shute v. Taylor, 5 Metc. (Mass.) 61; Haldeman v. Jennings, 14 Ark. 329.

MITCHELL, J.

By an ordinance passed in 1883, the village (now city) of Duluth, in consideration of the benefits that would result to it and its inhabitants from the erection and operation of gas and water works, granted to the Duluth Gas & Water Company the privilege of establishing, maintaining and operating gas and water works, and of laying mains and pipes, and placing fire hydrants and lamp-posts in and along the streets, avenues, alleys and public grounds of the city for the supply of gas or water suitable for domestic and other purposes. The water furnished was to be "good and wholesome." The only provision as to the source of supply was that it should be Lake Superior, at some point east of the mouth of Chester creek. The ordinance further provided that the company should erect and maintain a certain number of fire hydrants, with fire-hose nozzles fitted to connect with the hose couplings used by the village fire department.

It was expressly provided that these fire hydrants were not for the private use of citizens or for street-sprinkling purposes, but should only be used for fire-protection purposes, fire-company practice and for flushing gutters. As rental for the use of these fire hydrants the city was to pay a certain sum per annum, payable quarterly. The ordinance also prescribed a schedule of annual rates which the company might charge for water furnished consumers. This action was brought by the plaintiff, as assignee of the gas and

water company, to recover the agreed water rental of these fire hydrants for the quarter commencing October 1, 1896. The city, by way of defense, alleged that the company had for more than sixty days prior to October 1, 1896, and during all the time between that day and January 1, 1897, suffered a suspension of a supply of good and wholesome water, and thereby caused an insufficiency thereof for domestic and other purposes; that such suspension was not caused by the act of God, by public enemies or by unavoidable accident; and that, by reason of such default and suspension of a supply of good and wholesome water, payment of the hydrant rental sued for had been and now is suspended, according to the provisions of the sixth section of the ordinance which reads as follows:

"Sec. 6. In the event that said gas and water company, after said works shall have been in successful operation, suffer a suspension of a supply of good and wholesome water, thereby causing an insufficiency for domestic and other purposes for a period exceeding sixty days, then in that event said company shall forfeit all exclusive franchise herein granted pertaining to it as a gas and water company, unless such suspension shall have been caused by the act of God, by public enemies or unavoidable accident, and during such failure of supply all water rentals shall be suspended."

To this answer the plaintiff demurred on the ground that it did not state facts constituting a defense. From an order sustaining a demurrer the city appealed.

The case turns entirely upon the construction and effect to be given to the section quoted,—particularly to the last clause.

It will be observed that the city does not allege or claim that the water supplied to it through these hydrants was not adequate, both in quantity and quality, for the purposes for which it was furnished, to wit, fire protection. Its complaint is that the water was not pure and wholesome, and, therefore, not suitable for domestic and other purposes. The contention of the city is that this section provides for stipulated and liquidated damages in case of the company's default for sixty days as to either the quantity or quality of the water furnished, and that the measure of damages thus stipulated is the loss of all water rentals during the period of such default. Counsel does not positively assert that this would include private consumers

as well as the city, but it seems to us that this would logically follow from the position which he takes.

On the other hand, the contention of plaintiff's counsel is that this section refers only to the quantity, and not to the quality of the water, and, further, that the provision as to the suspension of water rentals is a mere penalty and not liquidated damages, and, therefore, that the city is relegated to its actual damages.

We are not able to concur fully with the contention of either party. This section is not as well drawn or its language as apt as it might be, but we have no doubt that it refers to both the quantity and quality of the water supplied, and that it means that a default of the company in either respect for sixty days shall effect a loss or "suspension" of at least some water rents during the period of such default. If this ordinance is to be construed according to the same rules as would apply to an ordinary contract between private parties we have no doubt that it should be held to amount to a valid and enforceable stipulation for the adjustment of the amount of damages resulting from its breach. The intention to do so is apparent from the language used.

We are aware that an intention to liquidate damages, in order to be controlling, must be an intention to do so in the sense of making just compensation for the breach of the contract, and of basing the stipulated amount on that principle; and, in determining that fact, courts will disregard the form of words used and consider the nature of the entire contract with all concomitant facts and circumstances, —as, for example, whether the actual damages were or were not uncertain and difficult of ascertainment, and whether the stipulated amount was or was not disproportionate to the probable actual damages.

When the nature and object of this ordinance are considered no more appropriate case for stipulated damages can be conceived of. The object was to protect the lives, health, comfort and property of the inhabitants of the city by providing them with an ample supply of good water. The difficulty, if not impossibility, of either proving or recovering the actual damages in these respects, in case of a failure of the water company to furnish such a supply, is too apparent to require argument; and when we consider the great in-

juries, direct and consequential, liable to result from a default of the company for sixty days or more, it cannot be said that the stipulated damages were disproportionate to the probable actual damages.

But we do not think that this ordinance should, in that regard, be treated as if it was an ordinary contract between private parties. In granting this franchise the city was exercising a public and governmental function, to wit, providing the city with water for the use of the public. In granting the franchise the city could impose such conditions and enforceable penalties as it deemed necessary and proper to secure the object sought to be attained. It had the right to provide what rates or rentals the company might charge for water, and when and under what circumstances it should have the right to charge them. The business in which the water company was about to engage was one "affected with a public interest," and hence subject to regulation in the exercise of the police power of the state. In accepting this ordinance the water company accepted it with all its terms and conditions. Hence, we do not think that the ordinary rules which apply to a contract between private parties with reference to business "not affected with a public interest" have any application in determining whether this provision is or is not a nonenforceable penalty.

Even if the provision is to be considered as a penalty we think it is enforceable, although the same provision, if contained in a private contract, might be nonenforceable. There is no reason why the city, in exercising a governmental function with reference to a business affected with a public interest, might not incorporate into the very ordinance granting the franchise an enforceable condition or penalty in the nature of a police regulation to insure performance of its public duty on part of the grantee of the franchise.

But the question remains, what water rentals are "suspended" during the default of the water company? It seems to us that there is no middle ground between holding that it means only rentals from those consumers to whom defective service is rendered, or that whenever defective service, either as to quantity or quality, is rendered to any consumer, the rentals of all other consumers are also suspended.

For example, suppose that private consumers are furnished an ample supply of pure and wholesome water; could they defeat actions to recover their water rates by showing that the company had not furnished the city, at these fire hydrants, an adequate supply of water or the necessary pressure for fire protection? Or, again, suppose the company supplied the inhabitants of one part of the city with an adequate supply of good water; could they successfully defend suits to recover their water rates by showing that the company had failed to furnish the proper supply to the inhabitants of some other part of the city? Or, to take the present case, if the city in its corporate capacity has been furnished an adequate supply of water at these fire hydrants for the purposes of fire protection, can it successfully defend this suit by showing that the water supplied to private consumers for domestic purposes was not pure and wholesome?

We may concede the power of the city to provide that any failure of the company to furnish the proper supply of water to any consumer should suspend or forfeit its right to rentals from all consumers, but the question is, has the city so provided by the provisions of section 6? While the provision as to the suspension of water rentals is enforceable, yet it is highly penal in its nature, as the penalty or forfeiture, or whatever it may be termed, might often far exceed the actual damages. Therefore it should be construed with some strictness, and not extended by construction beyond what is clearly expressed or necessarily implied.

The provisions of the section are very general in their terms and so loosely drawn as to render their meaning, on the point now under consideration, somewhat obscure and ambiguous. There is nothing in the language of the section indicating an intention to make the city a trustee for private consumers, so as to enable it, when sued in its corporate capacity for its hydrant rentals, to defend by showing an inadequate service, or want of service, to private consumers, to their individual damage.

In view of all these considerations we are of the opinion that the construction of the ordinance contended for by the city is not permissible, and that its true construction is that the suspension of water rentals provided for only extends to those consumers to

whom inadequate water service is furnished.  It is suggested that, if private consumers are to be relegated to the defense of actions against them individually to recover their water rates, the remedy would be wholly inadequate and practically unavailing.  There is force in this suggestion, as applied to this particular remedy; and, if it was the only remedy, this would be a strong reason why we should, if possible, place a different construction upon this provision of the ordinance.  But the city has other ample remedies,—as, for example, forfeiting the franchise of the water company.

The order sustaining the demurrer to the answer is therefore affirmed.

COLLINS, J. (dissenting).

I am unable to agree with the majority of the court upon the proposition that if the water company furnished to the city, through the hydrants, a proper supply of water for fire-protection purposes, the fact that the former has failed to furnish to private consumers a quality of water suitable for domestic purposes is no defense to an action brought against the city to recover for hydrant rentals.

It seems to me that the language found in section 6 of the ordinance is plain and unambiguous.  If the company shall "suffer a suspension of a supply of good and wholesome water," it shall not only "forfeit all exclusive franchise," but "during such failure of supply all water rentals shall be suspended."  The sole purpose of this provision was to compel the company, which secured an exclusive and valuable franchise, to comply with the conditions of its contract.  Quality was of as much consequence as quantity and, upon noncompliance with respect to either quality or quantity, all water rentals were to be suspended.  The city was empowered in this summary manner to enforce the contract for pure and wholesome water, as well as for an adequate supply.

I concede that the provision is highly penal in its nature, but it is not as severe as that which provides for a forfeiture of the franchise, and yet the majority are of the opinion that this provision might be enforced under the conditions as to quality and quantity now being considered.  It was this particular remedy which was given into the hands of the municipality in case impure

and unwholesome water was furnished for domestic purposes, and it was expected, in my judgment, that the municipal authorities would be as deeply interested in protecting the inhabitants from disease as they would be in protecting their property from destruction by fire.

It is no justification of the position taken in the main opinion to say that the city, as such, has other remedies. The one plainly agreed upon cannot be wiped out of existence by such fact. And I am opposed to attributing to the council or to the company which secured the franchise a deliberate intent to compel individual customers to enter upon expensive litigation with a corporation in order to obtain full and prompt redress, should the water prove unfit for domestic purposes. Such a remedy would be none at all.

I therefore dissent as to this single question.