GORCO CONSTRUCTION COMPANY v. ED STEIN.

99 N. W. (2d) 69.

October 30, 1959—No. 37,744.

*Joe A. Walters,* for appellant.
*Theodor Herman,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

In this action for damages for a breach of a construction contract, issues arise as to whether the trial court erred in instructing the jury (1) that as a matter of law the wife was the agent of the husband and (2) that if a contract was found to exist damages must be awarded to the full amount of the 15 percent of the contract price as stipulated for liquidated damages.

Defendant placed an order with plaintiff's sales representative for the construction of two garages at a total cost of $1,800. The order form signed by the defendant contained the express provision that it was *subject to the approval and acceptance of the plaintiff's office manager.* Shortly after the construction order had been taken, plaintiff's sales representative contacted defendant's wife by telephone and informed her that her husband's order for the construction of the ga-

rages had been approved and accepted by the plaintiff. Either during the time intervening between defendant's placing of the order with plaintiff's sales representative and the latter's telephone conversation with defendant's wife informing her of the approval of the contract, or shortly thereafter, the defendant entered into a contract with another construction company for the building of the two garages.

Upon learning that defendant did not intend to permit the plaintiff to build the two garages, plaintiff's president contacted the defendant by telephone to verify that defendant had cancelled his order.

The jury found that defendant had made a contract with the plaintiff for the building of the garages and that by refusing to permit the plaintiff to build the garages he had breached the contract. Pursuant to the trial court's instructions, the jury awarded plaintiff $270 in damages or the full 15 percent of the contract price stipulated as liquidated damages.

■  It was prejudicial error to instruct the jury that under the circumstances the wife as a matter of law was the agent of her husband and that if the acceptance of the contract was communicated to the wife it would be the same as communicating it to him. It is, of course, well established that when a prospective customer, upon the solicitation of a sales representative, signs a written order for goods or services upon terms *which expressly provide that the order is taken subject to the acceptance or approval of the salesman's home office or of his principal,* the order is nothing more than an offer by the customer and does not become a contract until acceptance of the order has been *communicated* to the customer.[1]

■  It is likewise well settled that the marital relation does not, standing alone, constitute the wife the agent for her husband.[2] In Bergh v. Warner, 47 Minn. 250, 251, 50 N. W. 77, Mr. Justice Mit-

---

[1]Reid v. Northwestern Implement & Wagon Co. 79 Minn. 369, 82 N. W. 672; Kuzmeskus v. Pickup Motor Co. Inc. 330 Mass. 490, 115 N. E. (2d) 461; Koepke Sayles & Co. v. Lustig, 155 Wash. 70, 283 P. 458; Nelson Equipment Co. v. Harner, 191 Ore. 359, 230 P. (2d) 188, 24 A. L. R. (2d) 999.

[2]See, Hildebrandt v. Newell, 199 Minn. 319, 272 N. W. 257.

chell summarized the two circumstances in which a wife, as a matter of law or as an agent in fact, may act for her husband as follows:

"* * * This agency is frequently spoken of as being of two kinds— *First, that which the law creates* as the result of the marriage relation, by virtue of which the wife is authorized to pledge the husband's credit for the purpose of obtaining those necessaries which the husband himself has neglected or refused to furnish;[3] *second,* that which arises from the authority of the husband, expressly or impliedly conferred, as in other cases."[4] (Italics supplied.)

There is no evidence whatsoever in this case that the defendant either expressly or impliedly authorized his wife to act as his agent in negotiating for the building of the garage or for the specific purpose of receiving notification of plaintiff's acceptance of his order to build the two garages.[5] If there was any understanding between the plaintiff's sales representative and the defendant that the latter's wife was authorized to act as his agent for any purpose, such understanding is not revealed by the record.[6]

It follows, therefore, that if it was proper for the trial court to charge the jury that, as a matter of law, the defendant's wife was the agent of the defendant for the purpose of receiving notification of plaintiff's acceptance it must be justified upon the quasi-contractual theory[7]

---

[3]See footnote 7.

[4]That a husband's liability to pay for necessaries furnished his wife by third parties is contingent upon proof of the husband's refusal or neglect to provide them is no longer the law with respect to necessary household articles and supplies furnished to and used by the family while the husband and wife are living together. See, M. S. A. 519.05; Rotering v. Hibbard, 168 Minn. 502, 504, 210 N. W. 395, 396; S. E. Olson Co. v. Youngquist, 76 Minn. 26, 78 N. W. 870; 11 Minn. L. Rev. 279.

[5]See, S. E. Olson Co. v. Youngquist, 72 Minn. 432, 75 N. W. 727; Id. 76 Minn. 26, 78 N. W. 870; cf. Sinclair v. Fitzpatrick, 127 Minn. 530, 149 N. W. 1070.

[6]See, 26 Am. Jur., Husband and Wife, § 237.

[7]The liability of the husband for necessaries furnished the wife does not arise out of any agency relation but out of the husband's legal duty

that the defendant's wife was authorized to serve as defendant's agent for the purpose of obtaining necessaries, and under the facts it must appear that the two garages constituted necessaries. Such a theory is unsound.

In the first place, as plaintiff in its brief candidly admits, a search of the authorities has failed to disclose a case involving a consideration of whether a garage may be classified as a necessary. Indeed, it is somewhat unusual to conceive of two garages as being necessaries in the absence of clear evidence indicating such. The record in this case discloses no such evidence. Secondly, the facts of this case all indicate that the plaintiff's acceptance of defendant's order to construct the two garages was in no way an attempt to furnish the defendant's wife with necessaries. The plaintiff's sales representative negotiated for the construction of the two garages with the defendant, not with his wife. The first contact that plaintiff's sales representative had with defendant's wife was when he called her to inform the defendant that the Gorco Construction Company had accepted the defendant's order. Whether a garage ever falls into the classification of necessaries we need not here determine.[8]

■ Although there is here no basis for classifying the garages as necessaries, it is also not to be overlooked that the issue of classification is usually a question of fact for the jury. It is the general rule that whether an article is ordinarily a necessary, for which the wife may pledge the credit of the husband, is a question of fact unless the case is so clear that the court would be justified in directing the jury that the article cannot be a necessary.[9] By charging the jury that the de-

of support. Bergh v. Warner, 47 Minn. 250, 252, 50 N. W. 77, 78. The power of the wife to subject her husband to liability for necessaries is to be distinguished from her authority or apparent authority to purchase household supplies. Restatement, Agency, § 22, *comment c;* see M. S. A. 519.05 and footnote 4, *supra.*

[8]See Note, L. R. A. 1918F, 25, in re work and labor with respect to parties' residence.

[9]Bokelmann v. Bokelmann, 180 Minn. 100, 101, 230 N. W. 478; Bergh v. Warner, 47 Minn. 250, 50 N. W. 77; 9 Dunnell, Dig. (3 ed.) § 4276, p. 84.

fendant's wife was the agent of the defendant as a matter of law, the question of whether the two garages were necessaries was removed from the jury's consideration. It follows that, even if the theory advanced by the plaintiff were sound, the present case would require a new trial because of the further error arising from a failure to submit to the jury the question of whether the two garages were necessaries.

■ The construction order signed by the defendant contained a provision that, if he cancelled it after its acceptance, he agreed to pay plaintiff as liquidated damages a sum equal to 15 percent of the contract price to cover expenses incurred by plaintiff for the following items: *Salesman's commissions, advertising,* and the *committing of labor and equipment to perform the work.* Pursuant to this provision, the trial court instructed the jury to award plaintiff $270 in damages if they found a contract existed. The court erred. The modern trend is to look with candor, if not with favor, upon a contract provision for liquidated damages when entered into deliberately between parties who have equality of opportunity for understanding and insisting upon their rights, since an amicable adjustment in advance of difficult issues saves the time of courts, juries, parties, and witnesses and reduces the delay, uncertainty, and expense of litigation.[10] Accordingly this court has long regarded provisions for liquidated damages as prima facie valid[11] on the assumption that the parties in naming a liquidated sum intended it to be a fair compensation for an injury caused by a breach of contract and not a penalty for nonperformance.[12]

Although favorably disposed to giving effect to a provision for liquidated damages, this court has not hesitated, however, to scrutinize a particular provision to ascertain if it is one for a penalty or one for damages. In determining the issue neither the intention of the parties

[10]Meuwissen v. H. E. Westerman Lbr. Co. 218 Minn. 477, 16 N. W. (2d) 546; Wise v. United States, 249 U. S. 361, 39 S. Ct. 303, 63 L. ed. 647; Restatement, Contracts, § 339, *comment c.*

[11]Blunt v. Egeland, 104 Minn. 351, 116 N. W. 653; see, In re Grodnik's, Inc. (D. Minn.) 128 F. Supp. 941.

[12]See, 3 Williston, Contracts (Rev. ed.) § 778.

nor their expression of intention is the governing factor.[13] The controlling factor, rather than intent, is whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances.[14]

"* * * The law adopts as its guiding principles that the injured party is entitled to receive a fair equivalent for the actual damages necessarily resulting from failure to perform the contract and no more."[15]

Punishment of a promisor for breach, without regard to the extent of the harm that he has caused, is an unjust and unnecessary remedy[16] and a provision having an impact that is punitive rather than compensatory will not be enforced.

The Minnesota rule is in accord with Restatement, Contracts, § 339, which provides:

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."[17]

This court has held that where the actual damages resulting from a breach of the contract cannot be ascertained or measured by the or-

---

[13]State Trust Co. v. City of Duluth, 70 Minn. 257, 262, 73 N. W. 249, 250; Maudlin v. American Savings & Loan Assn. 63 Minn. 358, 366, 65 N. W. 645, 649.

[14]State Trust Co. v. City of Duluth, *supra*; Maudlin v. American Savings & Loan Assn. *supra*; 3 Williston, Contracts (Rev. ed.) §§ 778, 779.

[15]Schommer v. Flour City Ornamental Iron Works, 129 Minn. 244, 246, 152 N. W. 535, 536.

[16]Restatement, Contracts, § 339, *comment a.*

[17]For an excellent summary of the Minnesota cases, see Restatement, Contracts, § 339, pocket supplement of Minnesota Annotations prepared by Harvey Hoshour and Ralph H. Dwan.

dinary rules, a provision for liquidated damages not manifestly disproportionate to the actual damages will be sustained.[18] On the other hand, when the measure of damages resulting from a breach of contract is susceptible of definite measurement, we have uniformly held an amount greatly disproportionate to be a penalty.[19]

In the instant case the provision for liquidated damages covered specific elements of damages which were clearly and readily susceptible of definite measurement and proof by ordinary rules. These elements were: (1) Salesman's commission, (2) advertising, and (3) commitment of labor and equipment to perform contract. Obviously the amount of a salesman's commission is easily ascertained. No attempt was made to prove the payment of any commission. Likewise the actual committing of any labor or equipment to perform the contract was susceptible of proof without difficulty. The record, however, discloses that plaintiff learned that defendant had cancelled the contract prior to any commitment of labor or equipment and therefore no expenses therefor were incurred by plaintiff. Whether any advertising expense was attributable to the solicitation of defendant's order does not appear, but in any event it was another item susceptible of proof.

The plaintiff sought to justify the reasonableness of the figure of $270 provided for by the stipulated-damages provision by the testimony of Mr. Coplin, its president. He testified, over the defendant's objection, that Gorco Construction Company's ratio of selling expense to total sales was either 7.74 or 7.75, and its ratio of general and administrative expense to sales was 9.21. In view of the fact

---

[18] Restatement, Contracts, § 339, pocket supplement of Minnesota Annotations; Taylor v. Times Newspaper Co. 83 Minn. 523, 86 N. W. 760, 85 A. S. R. 473; Chapman v. Propp, 125 Minn. 447, 147 N. W. 442; McGuckin v. Harvey, 177 Minn. 208, 225 N. W. 19; Fasler v. Beard, 39 Minn. 32, 38 N. W. 755; see, Schommer v. Flour City Ornamental Iron Works, 129 Minn. 244, 246, 152 N. W. 535, 536; 4 Minn. L. Rev. 455.

[19] Maudlin v. American Savings & Loan Assn. 63 Minn. 358, 65 N. W. 645; J. I. Case Threshing Machine Co. v. Fronk, 105 Minn. 39, 117 N. W. 229; Dryer v. Kistler, 118 Minn. 112, 136 N. W. 750.

that it does not appear that plaintiff incurred any selling expense (i. e., salesman's commissions) as a result of the solicitation of defendant's order, it is difficult to see precisely what bearing plaintiff's ratio of selling expense to total sales has on the reasonableness of the stipulated-damages provision here under consideration. On cross-examination of Mr. Coplin it was brought out that plaintiff's ratio of general and administrative expenses to sales included such expenses as rent, utilities, the bookkeeper's salary, and accounting and legal fees. With respect to these types of expenses, this court in Goodell v. Accumulative Income Corp. 185 Minn. 213, 219, 240 N. W. 534, 537, in holding that a stipulated-damage provision was a penalty, made the following comment:

"Defendant states that the court will take judicial notice that defendant suffered damages in the matter of expense of selling the certificate, salaries of officers, maintenance of office, bookkeeping, investment of funds, etc. These are general expenses of conducting its business. Plaintiff's default neither increased nor decreased such expenses."

In fact the provision for liquidated damages relates to specific items which have no relation to rent, utilities, bookkeeper's salary, and accounting and legal fees.

Since the provision for liquidated damages relates solely to items readily subject to definite proof, and in view of the fact that the record is almost devoid of any evidence that would tend to support a conclusion that the sum stipulated for liquidated damages (i. e., 15 percent of $1,800 or $270) bears any reasonable relation to plaintiff's pecuniary loss, it must be concluded that the provision for liquidated damages is in the nature of a penalty and is therefore unenforceable.[20]

The order of the trial court is reversed and a new trial granted. Reversed and new trial granted.

---

[20]For a similar case involving a similar result, see J. I. Case Threshing Machine Co. v. Fronk, 105 Minn. 39, 117 N. W. 229.