# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1800

_____

| | | |
|---|---|---|
| Federal Deposit Insurance Corporation, | * | |
| as Receiver for Jackson Exchange Bank | * | |
| & Trust Company, and First Exchange | * | |
| Bank & Trust Company, | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | |
| vs. | * | Appeal from the United |
| | * | States District Court |
| James P. Davis, | * | for the Eastern District |
| | * | of Missouri. |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: December 15, 1998
Filed:  February 9, 1999

_____

Before BEAM and LOKEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

[1]The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

BOGUE, Senior District Judge.

James P. Davis appeals from a judgment on three promissory notes in favor of the Federal Deposit Insurance Corporation (FDIC), as receiver of two banks. We affirm.

## I.

*Background*

Between 1986 and 1991, Mid-America Management Corporation (Mid America), a hotel holding company, borrowed several million dollars from two Missouri banks, Jackson Exchange Bank & Trust Company (JEB) and First Exchange Bank & Trust Company of North St. Louis County (FEB). The promissory notes evidencing these loans included a $50,000 note between Mid-America and JEB and two notes given by Mid-America to FEB in the amounts of $100,000 and $200,000. The notes were secured by personal guarantees executed by James P. Davis, the appellant in this case.

Mid-America defaulted on the loans. By May, 1992, JEB and FEB had become insolvent and were taken over by the Federal Deposit Insurance Corporation (FDIC). The FDIC, in its receivership capacity, proceeded to foreclose. The FDIC brought suit and filed a motion for partial summary judgment against James Davis and other individuals who are not parties to this appeal, alleging failure to pay indebtedness under guarantees. The District Court[2] granted the motion as against Davis.

_____

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

2

Davis then moved to amend the court's judgment on the theory that the loans from FEB and JEB to Mid-America were secured by the personal property of Mid-America. Davis' interpretation of the promissory notes concluded that the loans were secured, despite the conspicuous placement of the word "Unsecured" on the notes. Therefore, he argued, the District Court's ruling was in error since the FDIC had not served notice before disposing of certain collateral and seeking to enforce his guaranty. See Mo. Ann. Stat. § 400.9-504(3) (West 1998). The court, in denying Davis' motion, found that:

> [T]he record indicates that the parties' intent was that the loan was to be unsecured as designated in large type on the face of the contract. The size of the type, as well as the placement of the term in an open space area, indicates that the parties intent [sic] that the term "unsecured" override any preprinted, smaller type in that area of the form. Furthermore, none of the boxes in this area were checked, further supporting the inference that the parties chose to ignore the preprinted terms and designate the note as unsecured by placing the term in an open space where it would be clearly visible. Moreover, the Court finds that there is no proof, from affidavits or otherwise, of any facts stated in the relationship of the parties tending to suggest that the parties intended this note be secured.

It is from this ruling that Davis appeals.

II.

*Discussion*

We review a district court's grant of summary judgment de novo. JN Exploration & Production v. Western Gas Resources, 153 F.3d 906, 909 (8th Cir. 1998). A de novo standard of review is also dictated by the substantive issues involved. The District Court based its holding on a finding that the language of the promissory notes was unambiguous. "The determination that a contract is not ambiguous is a legal determination, and no deference is paid to the trial court's decision on the issue." Maurice Sunderland Architecture, Inc. v. Simon, 5 F.3d 334, 337 (8th Cir. 1993) (citation omitted). Thus, we review the District Court's decision de novo and ask whether the facts, viewed in a light most favorable to Davis, demonstrate that the FDIC is entitled to judgment as a matter of law. See id. at n.4.

As to the applicable law, federal law generally governs the interpretation of guaranties and promissory notes, United States v. Conrad Publishing Co., 589 F.2d 949, 953 (8th Cir. 1978), but in a case where the FDIC is suing a private party in its capacity as a receiver, state law can inform the content of federal law. FDIC v. Bowles Livestock Comm'n Co., 937 F.2d 1350, 1353-54 (8th Cir. 1991). The notes themselves indicate that the parties intended for any disputes to be governed by Missouri law. Accordingly, this Court will apply the substantive law of Missouri. See East Prairie R-2 School Dist. v. United States Gypsum Co., 813 F.Supp. 1396, 1401 (E.D. Mo. 1993) (applying contract choice of law provision to interpretation of agreement).

We turn to the language of the promissory notes.

The middle part of each document is the security agreement portion. In small type, buried in a relatively lengthy paragraph, is language which Davis highlights: "[c] Borrower hereby grants Lender a Security Interest in all other personal property of the Borrower of kind and description which is now or hereafter comes into the possession of the Lender for any reason, including but not limited to property delivered for safekeeping, or for collection or exchange, and all dividends and

4

distributions on and other rights in connection with such property."  A few lines further down, in subsection (e), the document reads: "If checked, this Note is secured by the Security Agreement hereafter and Borrower hereby grants to the Lender a Security Interest under the Uniform Commercial Code in the following described Collateral:" Thereafter is found a list of types of collateral which can be checked off by marking a small box before the separate items, which are printed in capital letters, such as "INVENTORY: All Inventory of the Borrower, whether now owned or hereafter acquired and wherever located[;]" "EQUIPMENT . . .[;]" "FARM PRODUCTS . . .[;]" and so on.  None of these boxes were checked.

After this list, which also includes "accounts" and "general intangibles," the documents continue: "In addition to any property generally described above, the following Collateral:" followed by a blank large blank space in which has been typed, in conspicuously large font, "Unsecured."  It is this term, being the only alteration made to this section of the loan documents, upon which the FDIC focuses its arguments.

Davis claims that the term "Unsecured" refers only to additional collateral security which would be afforded to JEB and FEB if additional boxes such as the box accompanying "Farm Products" were checked.  None of these boxes were checked. Davis' contention is that the word "Unsecured" was only intended to modify the additional collateral language; that the note was unsecured with regard to farm products, inventory, accounts, and so on, but nonetheless secured by the "personal property" described in the previous section of the documents.

The FDIC counters that this interpretation fails to give effect to the phrase "if checked" in the documents and the accompanying string of blank check-mark boxes. After all, the agency asks rhetorically, why would the parties insert the word "Unsecured" if merely leaving the boxes unchecked would accomplish the same purpose?  Davis' interpretation would mean that the unwary borrower would grant a security interest in its personal property even if no boxes were checked because of

the boilerplate language in subsection (c). For the parties to make the effort to add the word "Unsecured" simply to modify a series of unchecked boxes would be superfluous, the FDIC reasons. The only logical interpretation of the documents, the agency concludes, is that by inserting the word "Unsecured" and leaving the preceding boxes blank, the parties intended for the loans to be unsecured. We agree.

The conspicuous placement of the word "Unsecured" in a large blank area of the documents clearly indicates the parties' intent that the loans were to be unsecured. The fact that the different types of UCC collateral were left unmarked further supports this interpretation, the nonspecific boilerplate language in the previous section of the documents notwithstanding. Were we to attempt to give effect to this language which Davis argues is controlling, we would be faced with the additional task of discerning the parties' intended definition of "personal property" which in UCC parlance is merely a general descriptor which includes the subtypes of collateral listed in the document which were, again, left unchecked by the parties. See Mo. Ann. Stat. § 400.9-102(1) (West 1998). We have no occasion to delve into such imponderables because we find that the contracts unambiguously indicate the parties' intent that the loans be unsecured.

III.

*Conclusion*

Davis has created no genuine issue of material fact and therefore summary judgment in favor of the FDIC was appropriate. The intent of the parties that the loans were to be unsecured is indicated unambiguously by the large clear typed word "Unsecured" and the choice of the parties to leave all the boxes next to the individual types of collateral unchecked. Thus, we must affirm the holding of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.