# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-2438/07-2480

———————

| | | |
|---|---|---|
| Tri-State Financial, LLC, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| First Dakota National Bank, | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |

———————

Submitted: March 12, 2008
Filed: August 14, 2008

———————

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

This case arises out of the bankruptcy case of Tri-State Ethanol Company (TSE), the former owner of an ethanol plant in South Dakota, which Appellee Tri-State Financial, LLC (TSF) purchased from the bankruptcy estate. Appellant First Dakota National Bank (the "Bank") provided TSE with the construction and permanent financing for the plant. The Bank was paid the principal and interest it was

due out of the proceeds from the sale of the plant. The Bank filed an 11 U.S.C. § 506(b)[1] Motion for Allowance of Prepayment Charge, asserting that TSE had agreed to pay a two percent prepayment penalty in the event of early payment which the Bank alleged occurred in this case. Both TSF and the bankruptcy trustee objected to the Bank's motion. Following a hearing, the bankruptcy court denied the motion under section 506(b) but allowed the prepayment charge under 11 U.S.C. § 502(b) as a component of the Bank's secured claim against TSE.[2]

TSF appealed that decision in the district court,[3] and the Bank cross-appealed, asserting that recovery of the prepayment penalty was proper under section 506(b). The district court affirmed the bankruptcy court with respect to section 506(b) but

---

[1]Section 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose.

11 U.S.C. § 506(b). Section 506(b) controls the question of whether an oversecured creditor can recover prepayment penalty arising after the filing of the bankruptcy petition. See id.; In re Schriock Const., Inc., 104 F.3d 200, 201 (8th Cir. 1997).

[2]Section 502(b) states that, with certain exceptions in other subsections of section 502, "if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . ." 11 U.S.C. § 502(b). Section 502(b) determines whether an oversecured creditor is entitled to a prepayment penalty arising prepetition as part of its allowed secured claim. See id.; In re Welzel, 275 F.3d 1308, 1317 (11th Cir. 2001) (en banc).

[3]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

reversed as to the bankruptcy court's imposition of the prepayment charge pursuant to section 502(b), and the Bank appeals. TSF filed a cross-appeal. Though this case comes to us on appeal from the district court, we sit in review of the bankruptcy court's decision. See In re MBA Poultry, L.L.C., 291 F.3d 528, 533 (8th Cir. 2002). For the reasons stated below, we reverse the judgment of the bankruptcy court.

I.

On May 14, 2001, the Bank and TSE entered into a business loan agreement ("BLA") in which the Bank agreed to loan TSE $9 million for the construction of the ethanol plant. TSE executed a $9 million promissory note of the same date with a maturity date of February 14, 2002.[4] On February 6, 2002, the parties executed a loan modification agreement (LMA), extending the maturity of the May 14, 2001 promissory note until March 15, 2002. On March 15, 2002, TSE executed a promissory note (the "First Note") in the amount of $9 million. The First Note was to mature on March 1, 2012 and called for monthly principal and interest payments beginning June 1, 2002. The plant began experiencing problems, and TSE lacked the funds to keep it going. On November 20, 2002, the Bank made another loan to TSE in the amount of $600,000 evinced by a promissory note (the "Second Note"). The First and Second Notes were secured by mortgages on the TSE ethanol plant. TSE defaulted on the First and Second Notes.

On May 16, 2003, the Bank filed an action in Roberts County, South Dakota, to foreclose its mortgage on the TSE ethanol plant. The Bank's complaint states that "[u]nder the terms of the Notes, First Dakota has declared the entire principal, accrued

---

[4]The BLA provided in part: "B) Prepayment. A prepayment charge of 2% on any unscheduled principal payments for the first seven years of the term loan in excess of the aforementioned free cash flow[.]" The BLA defines "free cash flow" but does not define "prepayment." The BLA section, "DEFAULT" does not mention required prepayment penalty in the event of default.

interest, and other amounts owed to the bank, to be immediately due and payable." The complaint did not specifically address any prepayment penalty.

TSE filed a Chapter 11 bankruptcy case on May 23, 2003. During the pendency of the Chapter 11 action, the Bank collected payments on the First and Second Notes. This ceased when TSE's case was converted to a Chapter 7 case on July 29, 2004. The trustee sold the ethanol plant in 2005. Pursuant to a bankruptcy court order of February 15, 2005, the trustee paid the Bank $9,816,321.60, constituting the entire amount of principal and accrued interest due the Bank. The trustee did not pay the Bank any prepayment penalty.

On August 11, 2005, the Bank filed a Section 506(b) Motion for Allowance of Prepayment Charge. The Bank sought $173,253.27, which it claimed to be entitled to as a result of TSE's alleged prepayment, *i.e.*, paying off the loan prior to the expiration of the period provided for in the First Note. Both TSF and the Trustee objected to the motion, and the bankruptcy court conducted a hearing on the matter. The bankruptcy court determined that the prepayment charge became due and payable when the Bank filed the foreclosure action, prior to TSE's commencement of the bankruptcy proceedings. Recognizing that section 506(b) only applies to claims arising postpetition such that it was inapplicable to the Bank's claim, the bankruptcy court denied the Bank's motion under section 506(b). However, the bankruptcy court allowed the prepayment charge pursuant to section 502(b) as a component of the Bank's secured claim arising prepetition.

TSF appealed the bankruptcy court's decision to allow recovery by the Bank of the prepayment penalty as a prepetition liability under section 502(b). The Bank filed a cross-appeal, challenging the bankruptcy court's ruling denying its claim under section 506(b). TSF argued that the Bank had waived any right to claim relief under section 506(b) by accepting payment of principal and interest in accordance with the bankruptcy court's order finding that the Bank was entitled to such recovery pursuant

to section 502(b). The district court denied the Bank's cross-appeal pursuant to section 506(b), finding section 506(b) not relevant to the case because, if the Bank's claim for the prepayment penalty arose at all, it did so prepetition when the Bank accelerated TSE's debt by filing the foreclosure action.

The district court reversed the bankruptcy court's finding that the Bank was entitled to recover the prepayment penalty pursuant to section 502(b) because, even if the parties had agreed in the event of prepayment TSE would be liable for a prepayment penalty, there was no prepayment. Rather, the district court determined that, as a result of the Bank's acceleration of TSE's debt with the filing of the foreclosure action, the debt matured and subsequent payment of the debt could not, therefore, be a prepayment. The Bank appeals the district court's determination that it is not entitled to recovery of a prepayment penalty. TSF cross-appeals because the district court did not hold that the Bank had waived any right to recovery pursuant to section 506(b). TSF also challenges the district court's failure to reverse what it alleges to be determinations by the bankruptcy court that: (1) the Bank did not have to establish that the prepayment was from other than excess free cash flow or (2) that the prepayment charge was void as liquidated damages.

## II.

"In a bankruptcy appeal, this court sits as a second court of review and applies the same standards of review as the district court. Like the district court, we review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." MBA Poultry, 291 F.3d at 533 (internal citations omitted). As such, we review the bankruptcy court's interpretation of a contract de novo. Matrix Group Ltd., Inc. v. Rawlings Sporting Goods, Co., 477 F.3d 583, 590 (8th Cir. 2007).

III.

Aside from the application of sections 502(b) or 506(b), we must consider whether the parties agreed to the imposition of a prepayment penalty. As the party seeking recovery of the prepayment charge, the Bank bears the burden of proof. See Raleigh v. Ill. Dept. of Revenue, 530 U.S. 15, 21 (2000) ("[T]he burden of proof is an essential element of the claim itself; one who asserts a claim [in bankruptcy] is entitled to the burden of proof that normally comes with it."). According to the Bank's motion, "[TSE] promised to pay 'a prepayment charge of 2% of any unscheduled principal payments for the first seven years of the loan' except for permitted prepayments from excess cash flow" in the First Note.[5] The Bank goes on to state that, because the "Trustee's payment of all principal and interest . . . occurred during the first seven years of the loan (prior to its maturity) and was from proceeds of the sale of [TSE's] assets . . . [it] was not a permitted prepayment." Thus, the issue of whether the Bank is entitled to a prepayment penalty turns on the language of the First Note.[6]

---

[5]The BLA also contains this statement.

[6]The mortgage securing the First Note states: "Accelerate Indebtedness. Lender shall have the right at its option without notice to Grantor to declare the entire indebtedness immediately due and payable, including any prepayment penalty, which Grantor would be required to pay." The mortgage does not address the circumstances upon which a prepayment penalty would be assessed against TSE. Therefore, we read this provision of the mortgage as providing that, upon acceleration, the Bank would be entitled to recover a prepayment penalty if TSE had elsewhere agreed to undertake such an obligation upon acceleration. Accordingly, the language of the mortgage does not grant or forestall the imposition of a prepayment penalty on the facts of this case and, therefore, is not helpful to our resolution of whether TSE is liable for a prepayment penalty on these facts.

-6-

The First Note has two provisions that address the issue of prepayment:

> PREPAYMENT MINIMUM INTEREST CHARGE . . . In any event, even upon full repayment of this note, Borrower understands that Lender is entitled to a minimum interest charge of $50. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due.
> . . .
> PREPAYMENT PROVISION. A prepayment charge of 2% on any unscheduled principal payments for the first seven years of the term loan, in excess of the free cash flow. Free cash flow is defined in the Business Loan Agreement dated May 14, 2001.

As the Bank conceded at oral argument, there is a built-in conflict in the First Note concerning prepayment. On one hand, the First Note states that, other than a minimum interest charge, TSE will not be penalized in the event of early payment. On the other hand, the First Note provides for a two percent prepayment penalty. Accordingly, it is impossible to give effect to both provisions. In order to resolve the conflict, the parties would have us rely on different principles of contract construction under South Dakota law.[7]

The Bank asserts that the "PREPAYMENT PROVISION" trumps because it is more specific than the "PREPAYMENT MINIMUM INTEREST CHARGE" provision such that TSE agreed to pay a prepayment penalty. South Dakota law provides:

_____

[7]Though federal law generally governs the interpretation of a promissory note, we will apply the substantive law of South Dakota because the First Note indicates that the Bank and TSE intended for any disputes to be governed by South Dakota law. See FDIC v. Davis, 167 F.3d 1199, 1201 (8th Cir. 1999).

It is a fundamental rule of contract interpretation that the entire contract and all its provisions must be given meaning if that can be accomplished consistently and reasonably. However, when provisions conflict and full weight cannot be given to each, the more specific clauses are deemed to reflect the parties . . . intentions-a specific provision controls a general one.

State v. Pursley, 729 N.W.2d 351, 355 (S.D. 2007) (quotation omitted). However, in this case, we are not convinced of the Bank's characterization of the provisions. The Bank's sole support for its contention is its statement, at oral argument, that the "PREPAYMENT MINIMUM INTEREST CHARGE" provision constitutes boilerplate language that appears in every loan agreement the Bank drafts. Without any support in the record for such an assertion, it is too thin a reed for this court to accept or utilize as the basis for our construction of the First Note.

TSE relies on the principle that ambiguity is construed against the drafter, here the Bank, and, thus, the parties did not agree to a prepayment penalty. Indeed, South Dakota law provides that ambiguities are to be construed against the drafter. Ziegler Furniture & Funeral Home, Inc. v. Cicmanec, 709 N.W.2d 350, 357 (S.D. 2006). However, the Bank argues that this principle is inapplicable here for two reasons. First, there is no ambiguity because the stream of documents ultimately evince the parties' intent for the imposition of a prepayment penalty in certain circumstances, which are present in this case. Second, the negotiations that led to the drafting of the First Note were between sophisticated parties.

We reject the Bank's first contention, that the parties unambiguously agreed to a prepayment penalty, as the Bank conceded the presence of an internal conflict in the First Note. With respect to the Bank's second argument, we recognize that this court has declined to construe an ambiguous contract against its drafter where the parties were of relatively equal bargaining strengths, see Terra Intern., Inc. v. Miss. Chem. Corp., 119 F.3d 688, 692 (8th Cir. 1997) (applying Iowa law); however, the Bank did

not offer a case in which a South Dakota court did the same. Moreover, the Bank provided no South Dakota case law hinging the application of the principle of construing ambiguity against the drafter with a lack of equal bargaining power or linking the principal to the level of sophistication of the parties. Our independent inquiry also revealed no such South Dakota precedent. Rather, it appears that in South Dakota, this rule of construction is based on the notion that the drafter of a contract can more easily prevent mistakes in meaning than the one with whom the drafter is dealing. Singpiel v. Morris, 582 N.W.2d 715, 720 (S.D. 1998); see Enchanted World Doll Museum v. Buskohl, 398 N.W.2d 149, 152 (S.D. 1986) ("[O]ne who speaks or writes a contract can by exactness of expression more easily prevent mistakes in meaning than one with whom he is dealing[;] therefore[,] any doubts arising from ambiguity of language are resolved in favor of the latter.").

In sum, the Bank has failed to persuade us that the South Dakota courts would decline to construe the ambiguity in the First Note against the Bank. We do so and determine that the First Note does not provide for the imposition of a prepayment penalty under any set of facts. Also supporting this construction is the First Note provision entitled "Lender's Rights." This term states that, upon default, the Bank "may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount." There is no indication in this provision that a prepayment penalty was triggered by TSE's default. Because the lack of agreement regarding a prepayment penalty is dispositive of this appeal, we need not address the applicability of sections 502(b) or 506(b). Accordingly, we reverse the judgment of the bankruptcy court and dismiss the cross-appeal as moot.

_____