# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 14-1055

_____

In re: Bowles Sub Parcel A, LLC

*Debtor*

------------------------------

Bowles Sub Parcel A, LLC

*Appellant*

CW Capital Asset Management LLC, as special servicer for Wells Fargo Bank,
N.A., the trustee for the registered holders of J.P. Morgan Chase Commercial
Mortgage Securities Corporation Commercial Mortgage Pass-Through Certificates
Series 2004-LN2

*Appellee*

_____

## No. 14-1056

_____

In re: Fenton Sub Parcel A, LLC

*Debtor*

------------------------------

Fenton Sub Parcel A, LLC

*Appellant*

v.

CW Capital Asset Management LLC, as special servicer for Wells Fargo Bank, N.A., the trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corporation Commercial Mortgage Pass-Through Certificates Series 2004-LN2

*Appellee*

_____

No. 14-1060

_____

In re: Bowles Sub Parcel B, LLC

*Debtor*

------------------------------

Bowles Sub Parcel B, LLC

*Appellant*

CW Capital Asset Management LLC, as special servicer for Wells Fargo Bank, N.A., the trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corporation Commercial Mortgage Pass-Through Certificates Series 2004-LN2

*Appellee*

_____

No. 14-1061

_____

In re: Fenton Sub Parcel B, LLC

*Debtor*

------------------------------

Fenton Sub Parcel B, LLC

*Appellant*

v.

CW Capital Asset Management LLC, as special servicer for Wells Fargo Bank, N.A., the trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corporation Commercial Mortgage Pass-Through Certificates Series 2004-LN2

*Appellee*

_____

No. 14-1064

_____

In re: Bowles Sub Parcel C, LLC

*Debtor*

------------------------------

Bowles Sub Parcel C, LLC

*Appellant*

v.

CW Capital Asset Management LLC, as special servicer for Wells Fargo Bank, N.A., the trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corporation Commercial Mortgage Pass-Through Certificates Series 2004-LN2

*Appellee*

_____

No. 14-1065
_____

In re: Fenton Sub Parcel C, LLC

*Debtor*

------------------------------

Fenton Sub Parcel C, LLC

*Appellant*

v.

CW Capital Asset Management LLC, as special servicer for Wells Fargo Bank,
N.A., the trustee for the registered holders of J.P. Morgan Chase Commercial
Mortgage Securities Corporation Commercial Mortgage Pass-Through Certificates
Series 2004-LN2

*Appellee*

_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2015
Filed: July 1, 2015

_____

Before GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

In these six consolidated bankruptcy cases, we consider whether the bankruptcy court[1] erred in determining that a default-interest provision in a loan agreement was a valid liquidated-damages provision under Minnesota law. Having jurisdiction under 28 U.S.C. §1291, we affirm.

Appellants are six limited liability companies (collectively, Debtors). Debtors own three "pools" of commercial and industrial real estate that are subject to mortgages held by the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-LN2 (the Trust).[2] The Trust made three separate commercial loans to Debtors, pursuant to three separate promissory notes (Notes), each with virtually identical provisions except for the loan amounts, the collateral securing the loan, and other related, loan-specific data. Relevant to this appeal, section 1.04(c) of the Notes provided that upon a default, the interest rate on the remaining principal would be 5% in addition to the non-default rate of 5.04%.

In May 2011, Debtors defaulted on their loans; and in May 2012, they filed for Chapter 11 protection in bankruptcy court. The Trust then filed a proof of claim for default interest in the amount of $1,516,739.80. Debtors objected to the claim.

On February 12, 2013, the bankruptcy court held a hearing on the objections, and the Notes and other loan documents were admitted as evidence. Attorneys for both the Trust and Debtors called witness Rakeesh Patel, CW Capitol's assigned asset

---

[1]The Honorable Kathleen H. Sanberg, United States Bankruptcy Judge for the District of Minnesota.

[2]The Trust is a mortgage-backed security trust. Debtors' mortgages were sold to the Trust, which in turn sold them to investors. The Trust represents the investors.

manager for the loans.[3]  Patel testified about the expenses associated with a default of a loan such as this one[4] and said that the 5% default-interest rate was, in his experience, consistent with the default-interest rate for loans of a similar type.  He also testified that, though he lacked personal knowledge of the circumstances surrounding the signing of this particular loan, "there was no way to know what the damage is [or] what the defaults would have been at that time."

Stephen Hoyt, the chief manager for Debtors, also testified.  Hoyt said he was a knowledgeable and sophisticated real estate investor with 33 years of experience in commercial real estate.  According to Hoyt, the additional 5% default interest duplicated other costs associated with defaulting that Debtors were already paying the Trust.  These costs included attorneys' fees, late fees, and the costs of administration and enforcement.  Hoyt opined that enforcing the default-interest provision would result in "double debt paying, if not triple debt paying."  Patel expressly disagreed and testified that the default interest did not duplicate other costs Debtors were obligated to pay.

Following the hearing, the bankruptcy court allowed the claim for default interest, finding Debtors failed to rebut the presumption under Minnesota law that the default-interest provision in the Notes was a valid liquidated-damages provision.  Debtors appealed to the district court.  The district court affirmed,[5] agreeing that Debtors had not presented sufficient evidence to overcome the default-interest

---

[3]After the loans defaulted, CW Capital was hired as special servicer.  On March 10, 2015, we were notified that Torchlight Loan Services, LLC has been appointed as successor special servicer to CW Capital, effective May 20, 2014.

[4]The Notes were sold as collateralized mortgage debt securities to the Trust.  The Trustee manages the securities on behalf of the investors.

[5]The Honorable John R. Tunheim, United States District Court Judge for the District of Minnesota.

provision's presumptive validity. In this timely appeal, Debtors argue the default-interest provision is an unenforceable penalty under Minnesota law.

"Though this case comes to us on appeal from the district court, we sit in review of the bankruptcy court's decision." Tri-State Financial, LLC v. First Dakota Nat'l Bank, 538 F.3d 920, 922 (8th Cir. 2008). As the second court of review, we apply the same standards of review as the district court: "[W]e review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." Id. at 923–24 (quotation omitted).

First, Debtors assert the bankruptcy court misapplied Minnesota law[6] because it did not require the Trust to prove its actual damages. But Debtors misstate Minnesota law concerning liquidated damages. "Generally, liquidated damages are fixed sums payable to a party when actual damages are difficult to ascertain or prove." In re Qwest's Wholesale Serv. Quality Standards, 702 N.W.2d 246, 262 (Minn. 2005). Under Minnesota law, liquidated damage provisions are presumed valid. Gorco Constr. Co. v. Stein, 99 N.W.2d 69, 74 (Minn. 1959). To determine if a provision is a valid liquidated damages provision or an impermissible penalty, Minnesota courts consider whether (1) "the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach"; and (2) "the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." Id. at 74–75 (citing Restatement of Contracts § 339 (1932)). If these conditions are met, a contract provision for liquidated damages can be enforced without proving actual damages. Willgohs v. Buerman, 115 N.W.2d 59, 62 (Minn. 1962). Put another way, "where the actual damages resulting from a breach of the contract cannot be ascertained or measured by the ordinary rules, a provision for

---

[6]The parties agree Minnesota law applies. See In re Reuter, 686 F.3d 511, 515 (8th Cir. 2012) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtors's obligation . . . ." (quotation omitted)).

liquidated damages not manifestly disproportionate to the actual damages will be sustained." Gorco Const., 99 N.W.2d at 75. "The controlling factor . . . is whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances." Id. at 74.

The language of the Notes themselves supports the stipulated damages provision's validity. See Meuwissen v. H.E. Westerman Lumber Co., 16 N.W.2d 546, 550 (Minn. 1944) (noting that to determine whether a liquidated damages provision is valid, courts look at "the language of the contract itself and the facts and circumstances under which it was made" (quotation omitted)). In the Notes, the parties agreed "that it would be extremely difficult or impracticable to determine Lender's actual damages resulting from any late payment or default, and such late charges and default interest are reasonable estimates of those damages and do not constitute a penalty." The bankruptcy court found that both parties to the Notes "are sophisticated businesses knowledgeable about commercial lending practices." See Gorco Constr., 99 N.W.2d at 74 (explaining that, under Minnesota law, courts "look with candor, if not with favor, upon a contact provision for liquidated damages when entered into deliberately between parties who have equality of opportunity for understanding and insisting upon their rights"). Debtors do not dispute this finding.

Patel's testimony corroborated the parties' stipulation. He testified how the default interest compensated the Trust for costs associated with a loan shifting from a performing to a nonperforming loan, such as "the additional risk profile that the loan takes on when it's defaulted" and how such damages are "a little bit harder to put a number behind." Patel also testified that "there is no way to know what the damage is [or] what the defaults would have been at the time [the Notes were executed.]" Debtors offered no evidence to counter this testimony. Patel also testified that a 5% default-interest rate was, in his experience, consistent with the default-interest rate included in loans similar to this one. Based on the evidence presented at the

hearing, the bankruptcy court reasonably concluded that damages resulting from a default of the loan would be "difficult and impracticable" to calculate. Because liquidated damages are presumed valid under Minnesota law, it was Debtors' burden to show the provision was an unreasonable penalty. See Gorco Constr., 99 N.W.2d at 74–75. We agree that Debtors failed to meet this burden.

Debtors next argue the amount of default interest is greatly disproportionate to the Trust's actual damages because many of the costs the default interest purportedly covers are already provided for in other provisions of the loan. But Patel's testimony directly countered this assertion. Patel testified that the default interest reimbursed the Trust for costs incurred as a result of the default but not otherwise reimbursed, including the special servicer's salary expenses and overhead, vendor expenses, attorney fees, appraisals, and travel expenses. Patel also testified the Trust and master servicer had advanced principal and interest to bondholders while the Notes were in default. Patel testified the costs and advances totaled $1,798,377.85—an amount greater than the default interest. Debtors offered no evidence to rebut Patel's testimony that the default-interest provision did not duplicate other obligations they were paying under the Notes. Debtors thus have failed to show the liquidated damages in this case were "manifestly disproportionate to the actual damages" on these grounds. See Gorco Constr., 99 N.W.2d at 75.

Finally, Debtors assert that the bankruptcy court erred in allowing the default interest because actual damages for breach of a promissory note are always ascertainable. See LeFavor v. Stuebner, A04-509, 2004 WL 2283538, at *2 (Minn. Ct. App. Oct. 12, 2004) ("It is well established that when the breached contract involves only the payment of money, the damages are susceptible of definite measurement."); see also McGuckin v. Harvey, 225 N.W. 19, 19 (Minn. 1929); Maudlin v. Am. Sav. & Loan Ass'n, 65 N.W. 645, 649 (Minn. 1896). But the cases cited by Debtors do not concern the type of loan at issue here. The loans in this case are securitized commercial loans held by the Trust and sold to investors. A default

on this type of loan has unique costs that are difficult to quantify, including the increased risk of lending to a defaulted borrower. Based on the evidence presented in this case, the bankruptcy court did not err in concluding that for these Notes, the actual damages were not in fact readily ascertainable.

We affirm the judgment of the bankruptcy court.

_____